VINCENZO DEL PONTE *et als. vs.* SOCIETA ITALIANA DI M. S.
GUGLIELMO MARCONI.

PROVIDENCE—JANUARY 28, 1905.

PRESENT: Tillinghast, C. J., Douglas and Dubois, JJ.

(1) *Mandamus. Beneficial Association. Police Power of Corporations.*

Cap. VI art. 29, clause (i) of the by-laws of respondent society, provided as
follows: "Members will cease to form part of the society (i): For defam-
ing the members of the Directive Council or any member whatsoever for
reasons connected with the society, causing dissension and disorders in the
midst of the association."

Petitioners were expelled from the respondent society for the publication of
an article in a public newspaper. On petition for *mandamus*, seeking
restoration to membership:—

*Held,* that the article was clearly defamatory, holding the society and its
officers up to ridicule for reasons connected with the society and tending to
disorder and dissension in the association.

*Held,* further, that the power of expulsion in a corporation is included in what
may be denominated its police power, and a corporation may rightly es-
tablish by-laws providing for expulsion of members transgressing their
reasonable provisions.

*Held,* further, that the by-law in question was reasonable and that petitioners,
being guilty of its infraction, were properly subjected to its penalty.

DUBOIS, J. The petitioners, members of the respondent
society, an incorporated Italian beneficial association in Provi-

dence, Rhode Island, on the tenth day of September, 1904, inserted for publication in L'Eco del Rhode Island, an Italian newspaper published in said Providence, an article in Italian, which they have had translated into English, as follows:

"Paid Communication.

"A Little Light.

"Last June the Society G. Marconi reunited in General Assembly, elected to hold a celebration (to celebrate a festival) for the inauguration and consecration of the Society's flag. For this purpose it appointed two committees, one from the active members and the other, honorary, to the end that together they should work for the successful outcome of the celebration.

"The committee from the active members, also greatly aided by the honorary committee, did nevertheless reserve to itself the exclusive direction of the celebration, and the duties referred to, and that not because of vain pride, but because it knew and understood that it would have been dishonorable to the Society if by strangers should have been covered (carried out) the chief duties of the committee, and they should have been an integral part of the celebration (according to what is established in the By-laws). Thus organized, the two committees had already made considerable and satisfactory progress (reached a good point) when some attacks, unjust and stupid and some insinuations low and vile, and a thousand other bits of gossip emanated (came to move) from the accustomed (same old majority of) members unconscionable (unreasonable) and ignorant, against the members of committee of *directors*. These, offended in their own dignity, were obliged to present their resignations.

"The assembly, little caring that in their own midst (or among their own members) they did not any more have (there did not remain) persons capable of such an enterprise (or mission), accepted the resignations and appointed another committee. The new brave (estimable) committee assumed the duty, but nevertheless were soon persuaded of their incapacity and their almost inability (illiteracy) to read and

write, were compelled to replace in the hands of the honorary commission (committee) the entire direction of the celebration 'with what propriety on the part of the Marconi' every one thinks (is apparent to every one).

"For this reason we members here subscribed have demanded of Sig. Adam Aiello, president of the committee of the festival of our society, although not a member, however, how in the world he, who is a person old (experienced) in matters and questions of (pertaining to) associations, however in the world he had accepted a duty (undertaking) in our society, a duty that on such an occasion, since performed by a stranger, had brought upon us grave dishonor? To which the Sig. Aiello in public assembly answered that he had believed it necessary for the decorum (dignity, credit) of the Marconi to accept such a duty seeing that no one of the members making a part of (forming) the new committee was capable of organizing, or directing such a celebration; which thing or fact was not proved toward (in the breast (midst) of) the first commission (committee) now resigned; very true it is that he at the invitation of this (committee) on account of some (a certain) interest (reward) offered (made, given) to him, to accept that is, the position of president, thought it well to refuse because the Sig. V. Del. Ponte and the other colleagues (members) of the committee were persons more than capable of performing the duties entrusted to them.

"Now, we, the undersigned, seeing that this celebration on account of a majority unconscionable (unreasonable) led by a certain one more unconscionable (unreasonable) still, and childishly ambitious, brings to the society other than honor (dishonor), we declare that we do not recognize the celebration in question as a celebration of the 'Guglielmo Marconi,' and that to safeguard the decorum (dignity, credit) of the members and of citizens of Fori."

"V. Del Ponte, G. Monte, M. Del. Ponte, F. Calise,
"F. Esposito, A. Zabbo, T. Esposito, G. Esposito."

In consequence of this publication, on the first day of November, 1904, the petitioners were expelled from member-

ship in the society, as they claim, illegally and wrongfully. They therefore pray that a writ of *mandamus* may issue, commanding the respondent to restore them to membership.

To this petition the respondent has filed its answer, and in reply thereto the petitioners have filed their demurrer and replication.

The petitioners claim that, among others, the following questions are raised by the pleadings:

1.  Was the publication, by the petitioners, of the article in L'Eco del Rhode Island an act for the commission of which the respondent had the right to expel the petitioners under clause 1, art. 29, chap. VI of its by-laws?

2.  Was the publication, by the petitioners, of the article in L'Eco del Rhode Island an act for the commission of which the respondent had the right, at common law, to expel the petitioners?

3.  If the act done by the petitioners in publishing the article in L'Eco del Rhode Island is within the acts prohibited by the terms of the by-law, clause 1, art. 29, chap. VI, is such by-law valid?

Article 29, chapter VI, clause 1, as translated, is of the tenor following:

## "Chap. VI.

### "*Expulsion of Members.*

"Article 29. Members will cease to form part of the society: (1) For defaming the members of the Directive Council or any member whatsoever for reasons connected with the Society, causing dissension and disorders in the midst of the association."

The substantial question raised in this case is: Had the respondent the right to expel the petitioners for publishing the article in question, either at common law or under its by-law?

In the first place it is necessary to consider the purpose and object of the published article.

The petitioners claim that the whole tenor of the article shows that it was written for the purpose of re-establishing the reputation of the society in the community after that

reputation had suffered by reason of the acts and conduct of certain persons, and that nothing therein suggests malice on the part of the authors.

The article is published as a "paid communication." We take this to mean that it is inserted as an advertisement, although it may appear in the editorial or literary portion of the paper, and possibly, as notice that the paper does not hold itself responsible for the accuracy of the statements therein contained, but for that refers its readers to the persons over whose signatures the article appears. It is entitled, "A Little Light," and therefore purports to be of an enlightening or explanatory character.

Thereby it appears that the petitioners, well knowing that they were the only members of the society fit and capable to conduct a celebration for the inauguration and consecration of the society's flag, and having been appointed members of an active committee for that purpose, resigned said office and left the society helpless and powerless to proceed; that when the society feebly attempted to proceed without their aid by appointing a new and consequently incapable committee who, with alacrity, rushed in where the petitioners had declined to tread, the new committee, as might have been anticipated, were obliged to rely almost entirely upon the honorary committee, to the society's loss of dignity; that when the petitioners inquired of Mr. Adam Aiello, chairman of the honorary committee, but not a member of the society, why he with his experience of society matters accepted office in their society, dishonoring them, he answered, in public, that it was necessary to do so to organize and direct the celebration, because none of the members of the new committee were competent.

The petitioners further explain that when they offered him the post of chairman, before they resigned, he declined to accept because of the pre-eminent ability of the members of the active committee to discharge their duties. Foreseeing that the celebration, through fault of the ignorant majority in accepting their resignations, will be unsuccessful, they hasten to declare that they will not recognize it as a celebration of the

Marconi Society, hoping in this way to protect their dignity as members and citizens of Fori.

It is difficult to understand how such an article could tend to re-establish the reputation of the society. It is rather a prophecy that the celebration will be a failure, made by a minority against the majority of the members of the society. Doubtless the wish was father to the thought, and it was hardly likely that the writers of such an article would lend their aid to make the celebration a success.

The members of the society, including the petitioners, until the time of their resignations from the active committee, evidently regarded the proposed celebration, to be held for the inauguration and consecration of its flag, a celebration including ceremonies ecclesiastical and lay, as one eminently appropriate and likely to redound greatly to the credit of the society and to the enhancement of its dignity.

In the article in question it appears that the members of the society are peculiarly sensitive concerning their own dignity, and that of the society. The dignity of dignitaries in olden times was under especial protection, while words spoken in derogation of a common person were, at the most, mere slander; such words spoken in derogation of a peer, a judge, or other great officer of the realm were called *Scandalum Magnatum.* Dignity being sensitive, is peculiarly obnoxious to the attacks of ridicule.

The strength of a beneficial association lies in its cohesive and expansive qualities, or its capacity to increase and hold its membership. Anything that tends to loosen the bond of fellowship that binds the members together is injurious to the welfare of the society. The object of the society is to live and increase. It is therefore interested to preserve itself. Self-preservation has been termed the first law of nature. It is of the most ancient origin: it antedates all constitutions and statutes made by man. It is the law under which we live, move, and have our being: it is a law governing all persons, natural and artificial. High and low, rich and poor, wise and foolish, old and young, are subject to its inexorable sway. Obedience to it is rewarded, while disobedience to it is inevita-

bly punished. Out of its observance arises the doctrine of the survival of the fittest. It is an attribute of all corporations, from the State itself down to the least of its creatures. Upon it depends the police power of the State, which, in its broadest acceptation, means the general power of a government to preserve and promote public welfare by prohibiting all things hurtful to the comfort, safety, and welfare of society, and by establishing such rules as may be conducive of public benefit. Am. & Eng. Ency. L. 2d ed. vol. 22, p. 916, n. 2.

(1) The highest offence that can be committed against a State is treason, for it tends to the disruption of the State itself, and therefore is the offence most severely punished. Hence loyalty to the State is one of the first requisites of citizenship. So membership in a corporation or society is based upon the implied if not express condition of loyalty. Disloyalty is punishable by the corporation. The power of expulsion in a corporation is included in what may be denominated its police power, which is derived from the law of self-preservation. It must have the power to relieve itself of its discordant elements in order that harmony may prevail. *Com.* v. *St. Patrick Benevolent Society,* 2 Binn. 440, at p. 448; *Otto* v. *Tailors' P. & B. Union,* 75 Cal. 308, at p. 314. The corporation, therefore, had the right to establish by-laws providing for the expulsion of members transgressing their reasonable provisions. Is the provision for expelling members, "For defaming the members of the Directive Council or any member whatsoever for reasons connected with the society, causing dissension and disorders in the midst of the association," a reasonable one? We think that it is: it clearly comes within its police power. It does not provide for the expulsion of members who merely libel or slander members of the Directive Council or any member whatsoever, but such defamation must be "for reasons connected with the society;" and not that alone, but it goes further and provides for a result, to wit, "causing dissension and disorders in the midst of the association." Does the article published by the petitioners fall within the acts prohibited by the terms of the by-law, clause 1, art. 29, cap. VI? We think it does. In the first place, the article is libelous.

A libel has been defined to be "that which is written or printed and published, calculated to injure the reputation of another by bringing him into ridicule, hatred or contempt." 15 M. & W. 344. In the article the petitioners charge against a majority of their fellow members that they made unjust and stupid attacks and low and vile insinuations against the petitioners and caused them to resign. They charge the assembly with being incapable of executing such an enterprise, and, not caring for that, with accepting their resignations, which appears to have been the unpardonable sin in the minds of the petitioners. The words "The new brave committee" are evidently sarcastic, meaning more brave than discreet, because they immediately charge them with illiteracy. But the concluding paragraph contains even more: "Now, we, the undersigned, seeing that this celebration on account of an unreasonable majority," that is, unreasonable because they accepted the resignations of the petitioners and appointed another committee, "led by a certain one," meaning the president of the society, who, of course, leads the majority, "more unreasonable still and childishly ambitious, brings to the society dishonor," they declare that they, the minority, do not recognize the celebration, of the majority, "as a celebration of the 'Guglielmo Marconi,' and that to safeguard the dignity of the members and citizens of Fori."

After reading the article the feelings of the majority of the members of the society towards the petitioners might well be expressed in the words of Job: "No doubt but ye are the people, and wisdom shall die with you."

The article is certainly defamatory, holding the society and its officers up to ridicule, for reasons connected with the society, and manifestly does tend to disorder and dissension in the midst of the association. It is a most disloyal attempt to discountenance, discourage, and to cause to be regarded as counterfeit a genuine celebration undertaken as a solemn if not sacred duty by the society.

The dignity of the society is greater than that of any of its parts  While the withdrawal of the petitioners from the active committee may have been an appropriate penalty for

the offence committed against their dignity, the expulsion of the petitioners from the society is not too severe a punishment for the society to inflict upon them for their infraction of its dignity by the publication of the defamatory article of which they were the authors.

The cases cited by the petitioners do not conflict with the views above stated.

Petition for writ of *mandamus* denied.

*Richard E. Lyman*, for petitioners.

*Barney & Lee*, for respondents.