W. P. HARRIS V. E. S. AIKEN *et al.*

No. 15,023.   (92 Pac. 537.)

SYLLABUS BY THE, COURT.

1. VOLUNTARY ASSOCIATIONS—*Expulsion of a Member—Conditions.* An unincorporated voluntary association, not organized for profit, may lawfully expel a member, notwithstanding it may own property and membership therein may have a pecuniary value, if these conditions exist: That he is charged with conduct for which his expulsion is a proper penalty if he be guilty; that he has reasonable notice of the charge and opportunity to defend himself; that he is given a fair hearing; that a decision is rendered against him in good faith; and that he is not denied the benefit of any special rule that may exist relating to the matter.

2. ——— *Procedure—Notice—Accusation—Evidence—Tribunal.* It is not fatal to the validity of an order of expulsion made in such a case that the accused is not given written notice of a hearing, where he appears in response to an oral notice; or that the accusation against him is not reduced to writing, where he is fully and explicitly informed of its nature; or that information against him is received, by the body conducting an investigation of the charges, coming from persons who have no personal knowledge of his connection with the matter and whom he has no opportunity to cross-examine, where he is not denied the right to present anything he may desire on his own behalf and when he himself is the only witness examined at the hearing and his own testimony and conduct can be construed as evidence of his guilt; or that the members who started the investigation which resulted in the proceedings against him participated in rendering the de-

cision against him, where no bad faith is shown; or that the order of expulsion is made by a committee, when its action is afterward ratified by the association.

Error from Wyandotte district court; J. McCabe Moore, judge. Opinion filed November 9, 1907. Affirmed.

*John A. Hale,* for plaintiff in error.

*Keplinger & Trickett,* and *Ball & Ryland,* for defendants in error.

The opinion of the court was delivered by

Mason, J.: W. P. Harris brought a suit to enjoin the Traders Live Stock Exchange from giving effect to an order expelling him from membership in that body. Having been denied relief, he prosecutes error. The case was heard before a referee, who made full findings of fact, which are accepted by the parties. The question presented is whether the facts so found show that Harris was lawfully expelled. The exchange is not incorporated, and is not an organization for profit, but it owns some personal property, and its members enjoy certain trading privileges at the Kansas City stock-yards, so that a membership has a value of about $750. The association is based upon a code of rules, or by-laws, vesting the general management of its affairs in an executive committee of nine members, which also constitutes a committee on arbitration, whose duties are thus defined:

"It shall be the duty of the committee of arbitration to investigate all grievances of the members of this exchange relative to business at the stock-yards, and adopt such measures as they deem best, to amend the same, and their decisions shall be final."

Nowhere else in the by-laws is there any reference to the discipline of members, excepting for the following rule:

"All members convicted of any violation of any of

these rules shall be subject to a fine, suspension or expulsion, as recommended by the executive board."

The proceedings against Harris originated in information which came to members of the executive board that a conspiracy had existed between several weighmasters employed by the Kansas City Stockyards Company and certain members of the exchange in pursuance of which false weights were registered in favor of the latter. Three members of the committee began an investigation, in the course of which a weighmaster, one Bruce Reichelderfer, made a statement to them that he had favored Harris by returning false weights in transactions to which the latter was a party, and exhibited memoranda purporting to show this; he did not, however, profess to have personal knowledge that Harris was cognizant of the fraud. The further proceedings are thus recited in the findings:

"At this point Messrs. Downs, Farrar and Orvis reported the above information to the full executive committee of nine members, and thereupon the plaintiff was notified verbally, by a messenger sent for that purpose, that the executive committee desired to see him. The plaintiff went before the full committee, at which time and place Mr. Farrar, who was presiding, stated in detail the charges made against the plaintiff in the statement of the weighmaster of scale No. 2, giving the plaintiff the date of each transaction, the number of cattle bought or sold on each date, the true weight, the false weight, and the amount of money paid to the weighmaster for his criminal services.

"The plaintiff promptly denied having either directly or indirectly procured any false weight to be made, and denied all knowledge of any such transaction.

"The chairman of the executive committee then and there, in the presence of the full committee, informed the plaintiff that the committee were endeavoring to ascertain the truth or falsity of the statement made by Bruce Reichelderfer, for the purpose of vindicating the innocent and punishing the guilty, and asked the plaintiff to produce his books of accounts, in order that the

board might see whether his books threw any light upon the matter under investigation.

"The plaintiff at first refused to produce his books, then said he would consider the matter, and in the course of a few days produced the books of the firm of P. H. Harris & Co., of which the plaintiff was a member. These books recorded the purchases and sales set forth in Reichelderfer's memoranda and corresponded in all particulars with the memoranda, except that there was nothing to indicate that false weights entered into any of the transactions.

"The books of P. H. Harris & Co. showed an item of expense of eighty-five dollars, paid during the first week of May, 1904, the period during which the false weighing was said to have been done. The committee insisted upon an itemized statement of this expense and an explanation of it, but the plaintiff was unable to itemize this charge and to explain it to the satisfaction of the committee. The plaintiff was asked by the committee if he had any further evidence which he desired to offer, to which inquiry he answered that he had not.

"One or more members of the exchange implicated by the statement of Bruce Reichelderfer confessed the truth of the charge made against the confessing member, but none of these persons claimed to have any knowledge of W. P. Harris's connection with any such transaction."

Upon this evidence the executive board found Harris guilty of participating in a conspiracy to obtain false weights, ordered his expulsion, and notified him that he had been expelled. Afterward this action was reported to the exchange at a regular meeting, and a resolution was adopted approving and commending it.

We perceive no substantial grounds for questioning the regularity and sufficiency of the proceedings against Harris. The authorities recognize differences in the rules governing the expulsion by an association of one of its members, depending upon its character. In the case of a corporation organized for profit the offense upon which such action is based must be one prohibited by the written laws of the body, and perhaps a more rigid adherence to the prescribed method of procedure

is required than is essential where the organization is of a mere social character. (See 3 A. & E. Encycl. of L. 1072, 1073.) This Traders Life Stock Exchange, however, in spite of the fact that a membership therein has a pecuniary value, falls into the latter class rather than into the former, for its purpose is stated as being "to promote and protect all interests connected with the buying and selling of live stock at the Kansas City stock-yards, and to cultivate courteous and manly conduct [on the part of the members] toward each other and give dignity and responsibility to yard traders."

Moreover, nothing really necessary to effect a valid expulsion in any case appears to have been wanting here. We do not understand that it is even claimed that the charge against Harris was not such as justified expelling him if it was properly substantiated. Although the language of the by-laws already quoted is very general, it seems to warrant all that was done and the manner of doing it. Notwithstanding property rights may be involved, an association may sever relations with an offending member upon these conditions: That he is charged with conduct for which expulsion is a proper penalty if he be guilty; that he has reasonable notice of the charge and opportunity to defend himself against it; that he is given a fair hearing; that a decision is rendered against him in good faith; and that he is not denied the benefit of any special rule that may exist relating to the matter. All these conditions seem to be met here.

The objections urged by the plaintiff are: That he was not given a written notice of the proceedings against him; that he was not furnished with a written copy of the charge; that the action of the committee which conducted the investigation was influenced by information obtained from persons who did not appear at the hearing and whom he had no opportunity to cross-examine; that three members of the committee were the persons who began the investigation and

Harris v. Aiken.

whose attitude was that of prosecutors rather than triers; that the order of expulsion was made by the committee and not by the exchange itself. Of these in order it may be said: Harris appeared before the committee and it was therefore immaterial what kind of a notice he had or whether he had any. (*Moore v. National Council,* 65 Kan. 452, 70 Pac. 352.) He was given explicit and full information as to the precise character of the wrong-doing alleged against him, and his complaint of the want of a written accusation is wholly without merit—in no possible way could his substantial rights have been affected by such omission. It was not at all necessary that the hearing before the committee should have been conducted with the formalities attendant upon court proceedings or that the ordinary rules of evidence should have been enforced. (4 Cyc. 303.) Harris was sent for to give an account of himself in consequence of hearsay information— allegations made by persons who did not profess to have knowledge at first hand of his complicity in the conspiracy, and whose testimony on that account would not have been competent in court, and the cross-examination of whom could consequently not have been of vital importance. He was not denied the right to present anything he desired in his own behalf. He was the only witness before the executive board, the members of which obviously found in his own bearing and statements convincing proof of his guilt. There is nothing in the record tending to impugn the good faith of any member of the board, and the fact that three of them in pursuance of their duties and acting in the interest of the exchange started the investigation which resulted in the hearing and condemnation of Harris did not incapacitate them from sitting in judgment upon him. It is held to be competent for a society to delegate to a committee the authority to expel a member, making such action final. (See cases cited in note to *Ponte v. Marconi,* 27 R. I. 1, 60 Atl. 237, in 114 Am. St. Rep. 17, 26.) The rule relating to the

executive board while acting as a committee of arbitration seems to delegate the right of final action in such matters to that body; but however that may be, the subsequent approval of its course by the exchange amounted to a ratification of the order of expulsion.

It is unnecessary to review in detail the decisions bearing upon questions of the general character of those here involved. Cases have been cited which appear to tend to support some of the claims of the plaintiff. For the most part they are affected by peculiarities of statutes, charters or circumstances. But the present case does not approach near enough to the line of debatable ground to make it worth while to discuss nice distinctions.

The judgment is affirmed.