No. 45,963

Lee Brooks, *Appellant,* v. Petroleum Club of Wichita (a nonprofit Kansas Corporation); Donald D. Hollar, Elbie G. McNeil, Merle Britting, Richard A. Shelley, Robert F. Walters, K. W. Pringle, Jr., Charles D. Rodd, John Brewer, Norman Stewart, E. W. Strong, H. L. Wilson, O. E. Bradley, R. F. Ramsey, James M. Stewart, Wilson Rains, Donald C. Slawson, George Ewonus, all individually and as past and/or present officers and/or directors of Petroleum Club of Wichita; Herold Roach, individually and as manager of Petroleum Club of Wichita, *Appellees.*

(484 P. 2d 1026)

Opinion filed May 15, 1971.

*Charles R. Moberly,* of Wichita, argued the cause, and *J. D. White,* of the firm of Simon and White, of Wichita, was with him on the brief for the appellant.

*Robert Martin,* of the firm of Martin, Porter, Pringle, Schell and Fair, of Wichita, and *Joseph W. Kennedy,* of the firm of Morris, Laing, Evans and Brock, of Wichita, both argued the cause and were on the brief for the appellees.

The opinion of the court was delivered by

Kaul, J.: The appellant, Lee Brooks, was expelled from the

Petroleum Club of Wichita. He instituted this action in mandamus to compel his reinstatement and further sought to recover actual and punitive damages from certain of the defendants as a result of his alleged wrongful expulsion.

Appellee Petroleum Club is a nonprofit corporation. It is primarily a social club whose members are connected with the petroleum industry. Other appellees are past and present officers or directors of the Petroleum Club. Appellee Roach is manager of the Club. For convenience appellant will be referred to as Brooks or Plaintiff The appellees will be referred to collectively as defendants or identified as individuals when necessary.

On December 13, 1967, the Club's President, on behalf of the Board of Directors, addressed a letter to Brooks informing him that it had been brought to the Board's attention that he had not been conducting himself in the Club's quarters as a gentleman by using language not in keeping with the best interests of the Club, and that he had been guilty of drinking excessively. The letter also informed Brooks that his conduct would be reviewed from time to time. This letter was followed by a second, dated January 25, 1968, in which the Board informed Brooks that apparently the first letter had not accomplished its purpose; that his attitude and vulgar language had created needless embarrassment to members, their wives, and management of the Club. Brooks was further informed in the letter as follows:

"After careful consideration and discussion, the Board unanimously instructed the proper officer to notify you, as provided in the Club by-laws, Section 6, Article 12 (sic) [Art. VII.]. You are hereby notified to appear before a special Board meeting, Thursday, February 1, 1968, at 10:00 a. m. in the Board Room at the Petroleum Club, and present your case as to why you do not feel obligated to follow the rules of the Club and why you should not be suspended or expelled from the Club."

At the request of Brooks the special board meeting was continued from February 1 to February 5, 1968. Brooks appeared at the special meeting, which was attended by the President and ten other members of the Board of Directors. Minutes of the meeting were taken; the nature of the proceedings and the events which took place at the meeting were developed by the depositions of plaintiff and of those directors and officers who were present.

At the conclusion of the special meeting, the Board of Directors, either by voice or a show of hands, unanimously voted to expel Brooks. This lawsuit followed.

After pleadings were filed both parties took a number of depositions and filed several affidavits in support of motions for summary judgment filed by each party. Plaintiff's motion was for a partial summary judgment relating to the mandamus count of his petition. In his motion plaintiff set out pertinent By-Laws and House Rules of the Club and alleged that the depositions showed that the Directors and Officers of the Club failed to adhere to the By-Laws and House Rules in a number of particulars which will be identified and discussed.

Defendants in support of their motion for summary judgment also submitted depositions and affidavits of various members and employees of the Club.

The trial court overruled plaintiff's motion and sustained the motion of all of the defendants for summary judgment on each of plaintiff's claims for relief. The court found that there was no genuine issue of material fact remaining for trial; that the Board of Directors of the Petroleum Club acted in substantial compliance with the By-Laws and House Rules of the Club; and further noted that the court would not substitute its judgment for that of the Board of Diretors in determining whether or not plaintiff should have been expelled.

This appeal followed.

On appeal plaintiffs centers his attack on the trial court's finding that the By-Laws and House Rules of the Club had been substantially complied with by the Board of Directors in expelling plaintiff. Plaintiff first contends that no written complaint was made against him which he says is required by the provisions of Art. X of the House Rules which reads:

"Article X. Complaints. Section 1 . . . All complaints against the operation of the Club, other members and their guests, shall be made in writing, signed and addressed to the house committee."

By way of answer to plaintiff's contention on this point defendants say that the complaint in writing, referred to in the House Rules, has nothing to do with expulsion of a member, which is governed by the By-Laws. Defendants contend that Art. X of the House Rules was enacted for the protection of the Directors, management and employees, and not for the benefit of the person against whom the complaints were registered. Defendants point out that the Articles of Incorporation provide in part: "The conditions of membership shall be fixed by the by-laws." and that the section of the

By-Laws which deals with expulsion of members is Section 6 of Article VII. It reads:

"Article VII. Admissions, Resignations, Suspensions and Expulsions. Section 6. Discipline. A member may be reprimanded, suspended or expelled for cause, by a vote of two-thirds of all the Directors, but only after such member shall have had an opportunity to be heard. One week's written notice of the time and place when the Board will consider the charges accompanied by written statement thereof, shall be considered as affording such member sufficient opportuity to present his defense. Cause for reprimand, suspension or expulsion may consist of violation of the By-Laws or the rules of the Club, or of conduct which in the opinion of the Board of Directors, is prejudicial to good order, discipline or the general welfare of the Club."

We believe the position taken by defendants in this regard is correct. Article VII of the By-Laws requires one week's written notice of the time and place when charges will be considered and that the notice shall be accompanied by a written statement of the charges, but no mention is made of a written complaint. Furthermore, in his deposition plaintiff admits that he knew of the charges. His testimony is as follows:

"Q. You are contending here that you didn't understand what they were accusing you of? In other words, you knew that their complaint was that—just what it said in that letter?

"A. Bad language, excessive drinking.

"Q. Excessive drinking and bad language?

"Yes. Yes, but they didn't show me I was guilty of that.

"Q. Well, that is another question. You understood that is what the charge was?

"A. Yes.

"Q. You knew the charge.

"A. Certainly."

Where a member of a voluntary organization voluntarily appears before a committee or board, constituted for the purpose of hearing a dispute as to his membership, he is estopped from denying jurisdiction with respect to either person or subject matter. (6 Am. Jur. 2d., Associations and Clubs, § 35, p. 464.)

Since plaintiff appeared before the Board of Directors it was immaterial what kind of a notice he had. (*Johnson v. Prince Hall Grand Lodge,* 183 Kan. 141, 325 P. 2d 45; *Harris v. Aiken,* 76 Kan. 516, 92 Pac. 537; *Moore v. National Council,* 65 Kan. 452, 70 Pac 352.)

Plaintiff next contends that the Board of Directors failed to afford him a hearing, as provided by the By-Laws. Plaintiff complains that the Board of Directors refused to give him the names

of the members or other persons who had made complaints against him. He further complains that he was not permitted to call witnesses to testify in his behalf. The only provision for a hearing is that set out in Article VII, Section 6 of the By-Laws "such member shall have had an opportunity to be heard." Obviously, plaintiff was afforded an opportunity to be heard. Defendants say that plaintiff never denied the charges of use of vulgar language, loud tone of voice and objectionable conduct, but took the position that his conduct was not objectionable, and that if the Board of Directors disagreed their remedy was to exclude women from the barroom. Defendants contend that since plaintiff did not deny the charges, no issue of fact was created and thus there was no point in allowing plaintiff to call his drinking companions as witnesses.

The By-Law in question does not grant to a member the right to a formal hearing according to a specified procedure, but only affords the right to have an opportunity to be heard. In this case the charge against plaintiff, which he well understood, did not consist of a single act of misconduct, which for the purpose of identification must necessarily be pinpointed as to time and place, but consisted rather of continuous offensive conduct that did not lend itself to statement in the terms of specific time and place.

A perusal of the testimony of the Directors gives a clear description of what took place at the meeting. The testimony of the Directors and Brooks himself clearly shows that the position adopted by him was not a denial of the conduct with which he was charged, but instead an assertion that he should be able to pursue that conduct if he so desired. Brooks stated he told the Board of Directors that he felt his conduct was all right and he wanted to be either in or out of the Club and that it was his recommendation that a "men's bar be created." The testimony of Brooks and that of the Directors leads to the conclusion that the question framed in the meeting was whether the established code of conduct of the Club should be replaced by Brooks' own code of conduct. The position adopted by Brooks left no issue of fact to be determined by the Board of Directors.

Don Hollar, President of the Club at the time of the meeting, testified as follows:

". . . At that meeting, we informed Mr. Brooks that he had used embarrassing, profane and gutter language in the presence of ladies and had embarrassed the Club. It is my opinion that this was a specific statement. We did not describe individual incidents because he never denied using pro-

fanity and, in my opinion, it never became an issue at all in the hearing as far as I am concerned. The issue seemed to be that he thought he had a right to say these words and never did deny using profanity at all at the hearing, according to my recollection. He did ask who made the complaints, other than the manager. I informed him that we would not get into name-calling. If he had denied using profanity, I would have told him the names of the witnesses, but since he had not denied it we didn't make any issue out of it and it was not discussed any further."

Brooks asserts that he had prepared a list of names of the people he wished to call as witnesses. The list referred to was furnished to attorneys for the Club as part of discovery and depositions which were taken from all of those persons listed. They were members of the Club who were friends and associates of Brooks, who frequented the Club bar with him. In giving their deposition each was asked in substance if he had been called to testify at the meeting would he have denied that Brooks had used profane and vulgar language in the Club bar. Without exception they all answered in the negative to the effect that they could not deny that Brooks used essentially the language with which he was charged. Thus, in any event, it cannot be said that Brooks suffered any loss of substantial rights by reason of the Board's refusal to call his friends as witnesses.

From a close examination of the record we are led to the conclusion that Brooks was heard by the Board on the only issue framed by him, i. e., that his standards of conduct should be adopted by the Club in lieu of those established.

Finally, plaintiff contends that his expulsion was improper because the Board did not vote by "ballot" as specified in the By-Laws. In this connection subsection (a) of Section 1, of Article VII, of the By-laws grants the Board of Directors the following powers:

"(a) To admit applicants for membership, and to fine, suspend or expel members, by ballot, for nonpayment of dues, assessments or other obligations to the Club, or for conduct incompatible with the interests of the Club;"

Section 6 of Article VII of the By-Laws deals specifically with expulsion, in the following language:

"A member may be . . . expelled for cause, by a vote of two-thirds of all the Directors. . . ."

It is apparent that the words "ballot" and "vote" are used interchangeably in the By-Laws, and we find no place therein, and our attention is directed to none, which requires that a secret ballot or secret vote be taken. The record shows, and it is not denied

by plaintiff, that a vote was taken at the Board meeting, either by voice or a showing of hands. The record further reveals that the vote was unanimous by the Directors present. This action was substantially in compliance with the Club By-Laws. In *Johnson v. Prince Hall Grand Lodge,* supra, expulsion was challenged on the grounds that the charges were unsigned, and that the method of balloting used by the lodge was improper. The court addressed itself to the contentions in these words:

"In determining whether a benevolent or fraternal organization has fairly exercised its disciplinary powers, close adherence to the form of legal procedure is not required. It is sufficient if the accused is accorded those essentials which make for justice, rather than for form. (citing cases)." (p. 144.)

Further in the opinion it was stated:

"Where the accused has been given opportunity to defend himself and the proceedings have been conducted fairly and in good faith, no grounds exist for questioning their regularity or sufficiency. The question of whether the conduct of the plaintiffs in the case at bar was such as to warrant their suspension from the Grand Lodge is not before us. That issue is a matter of internal government and discipline of the order and is for its final determination. . . ." (p. 145.)

We find the By-Laws to be reasonable, consistent with the charter of the club and not in violation of fundamental concepts of due process of law. Proceedings based upon proper by-laws of a voluntary association, constitute due process of law as to members of such association. (*Moore v. National Council,* supra.)

The record shows that Brooks was given actual notice of the special Board of Directors meeting. He was apprised of the charges against him and admitted his awareness of those charges. He was afforded an opportunity to be heard. He did not deny the charges, but instead asserted in essence that his membership in the Club entitled him to conduct himself in the manner he chose and that the Club's remedy was to change the conditions and operation of the barroom, rather than to expel him or for a change in his conduct.

We believe plaintiff was given an opportunity to defend himself and that the proceedings were conducted fairly and in good faith; thus no grounds exist for judicial questioning on their regularity or sufficiency.

The judgment is affirmed.