[No. 25347–6–I. Division One. April 22, 1991.]

LEO F. GARVEY, ET AL, *Appellants,* v. THE SEATTLE
TENNIS CLUB, ET AL, *Respondents.*

*Leo F. Garvey,* for appellants.

*Michael Killeen* and *Davis Wright Tremaine,* for respondents.

FORREST, J.—The Garveys and their children appeal the trial court's summary judgment in favor of the Seattle Tennis Club (STC) following their expulsion, arguing that there is an issue of material fact as to whether the STC breached its bylaws in expelling the Garveys. We affirm.

The Seattle Tennis Club (STC) purported to expel the Garveys by a majority vote at a regular board meeting held on July 23, 1980. The Garveys had no notice of the meeting and did not attend. On July 26, 1980, Hoge Sullivan, president of the club, informed Mr. Garvey by phone that the board had decided to expel him and his family, and that the expulsion would be effective upon receipt of a forthcoming letter. The letter sent by the club stated that the

Board of Trustees has elected to expel you as members of the Seattle Tennis Club.
 This action is a result of your unbecoming conduct upon the premises of the Club on Tuesday, July 15, 1980.
 In accordance with the By–laws, Article II, Section 1, a hearing with the Board of Trustees has been scheduled for Monday, August 4, 1980, at 5:30 p.m.

The August 4 hearing was rescheduled to August 6, 1980.

Article 2, section 1 of the STC bylaws states that

 Any member of the Club who is guilty of unbecoming conduct upon the premises, or of a violation of any of these By–laws, or of conduct which disturbs the harmony or impairs the good name or prosperity of the Club, may, after hearing, if desired by the member charged, be reprimanded, suspended, or expelled from the Club by a two–thirds vote of the entire Board of Trustees.

At the special meeting on August 6, 1980, counsel for the Garveys protested the July 23 expulsion as lacking notice and as being carried out by a majority vote, rather than the required two–thirds vote. The Garveys also requested a "significant" delay in the hearing. The board offered a 10–day extension, which the Garveys did not accept. By letter, the STC then offered to postpone the hearing to the August 28 board meeting.

The board met on August 28, 1980, after notice was given to the Garveys and their counsel. The Garveys chose not to attend the meeting. The board reviewed the Garveys' misconduct on the club's premises and considered a settlement offer that the Garveys had made. By secret ballot, the board members then present (8 out of 9) voted unanimously in favor of expulsion. Amended minutes from the July 23, 1980, meeting were approved, stating that on July 23 the board elected "to initiate the procedure specified in the By–laws if [the Garveys] chose not to resign and requested a hearing."[1]

The Garveys filed suit in 1983, alleging that the club breached its bylaws in attempting to expel the Garveys by a majority vote on July 23, 1980, without notice or a hearing as required under the bylaws. The suit named the STC and members of the board as defendants. On March 4, 1985, partial summary judgment was granted in favor of the members of the board, dismissing all claims against the individual defendants and awarding them costs and fees. However, summary judgment was denied at that time with regard to the claim against the club because, the court said, there was a material issue of fact as to

> whether the plaintiffs were actually expelled on the July 23, 1980 Board of Trustees meeting and events thereafter were cosmetic, perfunctory and in effect an attempt to ratify a decision already made, if made, and then an attempt to comply with the bylaws.

At the time of trial on October 16, 1989, the STC moved to dismiss. The court reviewed the briefs and heard oral argument on the motion. During oral argument, the parties agreed that all material facts regarding liability were before

---

[1]The original *unapproved* minutes stated that "by majority vote, the Board of Trustees had elected to terminate the membership of Mr. and Mrs. Leo Garvey. It was requested that the General Manager inform them of this expulsion and in accordance with the By–laws of the Corporation, Article II, Section I, that they be given a hearing after the Club President had notified them that they had an option to resign their membership."

the court. Rather than finding a material issue of fact, the trial court's order of dismissal concluded that

> it is immaterial whether defendant intended to expel plaintiffs from membership in defendant's association at a Board of Trustees meeting held on July 23, 1980, because, thereafter, defendant offered plaintiffs the right to continued use of association facilities and complied with its Bylaws by offering plaintiffs the right to participate in a Board hearing, to review association files and records in advance, to have assistance of counsel, and to present evidence in their defense.
>
> . . . .
>
> There being no genuine issue of material fact and the Club having complied with its Bylaws, defendant is entitled to judgment as a matter of law.

Following entry of judgment, this timely appeal followed.

# I
## ISSUE OF MATERIAL FACT

 Although the Garveys claim that there is a factual issue as to whether the STC breached its bylaws, they have not identified to the trial court or this court any facts that support their assertion. To the contrary, when the trial court inquired the following exchange took place:

COURT: . . . Do I need any testimony?

MR. GARVEY: I think not Your Honor, I mean it's prima facie, it's on its face, our case either stands or falls on this [inaudible].

The trial court correctly ruled that the issue was whether as a matter of law the STC had breached its obligations to the Garveys.

# II
## BREACH OF BYLAWS

 The relationship between a social club and its members is one of contract.[2] When courts intervene in the internal affairs of a social club it is only to determine

---

[2]See Schroeder v. Meridian Imp. Club, 36 Wn.2d 925, 933–34, 221 P.2d 544 (1950); Rowland v. Union Hills Country Club, 157 Ariz. 301, 757 P.2d 105 (Ct. App. 1988); 6 Am. Jur. 2d Associations and Clubs § 33 (1963).

whether the club has violated its own rules.[3] The Garveys contend that the July 28, 1980, letter was not in conformity with the bylaws and hence was not effective to expel them. For purposes of the motion for summary judgment at the trial court, the STC agreed. Accordingly, the Garveys remained members and were entitled to privileges, as the STC expressly confirmed by letter, until the August 28 vote.

The Garveys' position is somewhat anomalous, claiming on the one hand that they cannot be expelled, and on the other hand seeking damages for wrongful expulsion. On their theory, reinstatement would be the only appropriate relief. They do not challenge the fairness of the bylaws nor do they establish that the board failed to comply with the bylaws in the proceedings following the initial letter. In effect, the Garveys claim that the error in initiating the proceedings cannot be cured and that they are immune from expulsion thereafter. We disagree. Not surprisingly, no authority is cited to support such a proposition. There is, however, substantial authority that a private club has the power to remedy procedural errors committed at initial proceedings in subsequent actions.

For example, in *Terrell v. Palomino Horse Breeders of Am.*,[4] the court held that even though an association's original suspension failed to include proper notice and a fair hearing, the member could be suspended pursuant to a subsequent proceeding in good faith. After noting the procedural infirmities of the initial suspension hearing, the court concluded:

> As indicated above, the issuance of the original suspension was tainted by due process denial. But an association may "re-try" a member for violation of its rules even though the member was denied due process in the original action. *See Jackson*

---

[3]There is no allegation of unlawful discrimination against the Garveys based on, for example, race, sex or religion, which might raise a different issue.

[4]414 N.E.2d 332 (Ind. Ct. App. 1980).

*v. American Yorkshire Club,* [340 F. Supp. 628 (N.D. Iowa 1971)] . . ..

*Terrell,* at 337.

█ No Washington case has addressed the precise issue, but any other result would be strange indeed. Even in the context of full criminal due process, a defective information does not necessarily create double jeopardy. The Garveys argue that they are denied due process because they cannot have a fair hearing before a board in which some members had voted in favor of expulsion. However, constitutional due process does not apply because the Garveys' action is private and of a social nature.[5] "Private action is immune from the restrictions of the Fourteenth Amendment." *Hurst v. Farmer,* 40 Wn. App. 116, 118, 697 P.2d 280, *review denied,* 103 Wn.2d 1038 (1985).[6] As stated in *Hartung v. Audubon Country Club, Inc.,* 785 S.W.2d 501, 503 n.1 (Ky. Ct. App. 1990):

> Many cases dealing with social club expulsion talk in terms of due process. In the traditional sense, due process is protection against state action. We fail to see its relevance in disputes between a voluntary private social club and its members.

(Citation omitted.) In the context of a subsequent expulsion of a club member whose initial expulsion was invalid, "[t]he Court's only directive in this regard is that any decision must be rendered in good faith and not in malice which simply means that [the member] must be accorded a fair hearing and fair decision." *Jackson v. American Yorkshire Club,* 340 F. Supp. 628, 636 (N.D. Iowa 1971).

Even assuming that some diluted form of due process applies to such relationships, the Garveys' claim is totally

---

[5]"We distinguish here the rights of a member of an organization which is related to earning one's livelihood or professional advancement from the rights of a member of a private, social club. The former has constitutional overtones that the latter does not." *Everglades Protective Syndicate, Inc. v. Makinney,* 391 So. 2d 262, 265 (Fla. Dist. Ct. App. 1980).

[6]*See Bartley v. Augusta Country Club, Inc.,* 254 Ga. 144, 144, 326 S.E.2d 442, 443 (1985) (club's discipline against member is not a matter of constitutional law.)

without merit. It is routine for courts, administrative bodies, and governing bodies of municipal corporations to reconsider determinations either in the course of the original proceeding or as a result of a remand due to procedural errors. The record is devoid of any evidence that the board of trustees could not have given fair and impartial consideration to the Garveys' version of events if the Garveys had chosen to present them. Not having put on a defense before the board, the Garveys waived any claim that such a hearing could not be fair. This is analogous to the ripeness rule requiring exhaustion of administrative remedies.[7] Here the Garveys did not exhaust their remedies because they refused to attend the August 28, 1980, hearing, and they were subsequently expelled pursuant to the STC bylaws. The trial court properly granted the STC's motion for summary judgment.

## III

### COSTS AND SANCTIONS

The STC requests attorney fees pursuant to RAP 18.1 as a sanction for the failure of the Garveys to comply with the RAP's and for the costs of the verbatim report of proceedings. The Garveys contend that the report was not necessary. We disagree. The matter came on for trial. A motion to dismiss was made that eventually became a dispositive ruling as a summary judgment. The record was required to establish the sequence of events, which arguments were advanced by the respective parties and thus preserved for appeal, and to determine whether dismissal on summary judgment was proper. Indeed, on appeal we have referred to the record to confirm that no material facts were at issue. Pursuant to RAP 18.1 the matter is referred to a court commissioner to award reimbursement for the cost of preparing the verbatim report of proceedings together with reasonable attorney fees for any violation of

---

[7]*Fallon v. Leavenworth*, 42 Wn. App. 766, 768, 710 P.2d 208 (1985).

the RAP's that significantly impacted the STC's defense of the appeal.

Affirmed.

BAKER and AGID, JJ., concur.