(94 P.3d 724)
No. 90,879

ALLEN, GIBBS & HOULIK, L.C., *Appellant,* v. KIMBERLY A. RISTOW, *Appellee.*

Opinion filed July 30, 2004.

*Terry L. Malone* and *Greg A. Drumright*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellant.

*Eric B. Metz* and *Jerald W. Rogers*, of Triplett, Woolf & Garretson, LLC, of Wichita, for appellee.

Before RULON, C.J., PIERRON and HILL, JJ.

HILL, J.: In this appeal we are asked to determine if the district court erred when it granted summary judgment in favor of Kim-

berly A. Ristow after her former employer, Allen, Gibbs & Houlik, L.C., attempted to enforce a noncompetition clause in its employment agreement. Because there was no legitimate business purpose for AGH that was protected by the covenant not to compete, under the facts of this case, we hold that enforcing the covenant would be unreasonable. Therefore, we affirm the district courts' grant of summary judgment to Ristow.

*BACKGROUND*

Ristow was hired in 1994 by AGH, a certified public accounting firm, to work in its employee benefits group. When Ristow began working for AGH as a record-keeping administrator, she was responsible for organizing records for qualified retirement plans and converting those types of records when they were transferred to AGH from other record keepers. Ristow subsequently assumed a supervisory position in 1997. When she left AGH, Ristow's responsibilities included daily administration of various employee benefit plans and supervision of three teams of administrators.

With her promotion in 1997, the parties executed a new employment contract that contained several clauses that were the foundation of AGH's lawsuit. The noncompetition clause states:

"During the Employee's employment with Employer, and within six (6) months thereafter, the Employee agrees not to negotiate for or accept a position with any client or center of influence of the Employer, or Koch Industries, Inc. and its affiliated companies without the express written consent of the Chief Executive or the Chief Executive's designate."

This clause was added because AGH had previously lost employees who worked in the employee benefits area because they were lured away by Intrust Bank, N.A. and NestEgg Consulting, Inc.

While employed at AGH, Ristow became acquainted with Troy Jordan, president of NestEgg and vice-president of Wealth Management Services for Intrust. Jordan contacted Ristow and made a subsequent offer of employment. Near the end of August 2001, Ristow accepted a position with Intrust and NestEgg and provided her 2-week resignation notice to AGH.

Shortly thereafter, Paul Allen, owner and CEO of AGH, informed Ristow that she would violate the agreement should she

accept the position with Intrust/NestEgg. Ristow's last day of work at AGH was September 11, 2001. On September 27, 2001, Ristow began working for NestEgg. AGH formally notified Ristow's counsel of her breach of the employment agreement on October 1, 2001.

On February 14, 2002, AGH filed a petition seeking liquidated damages based on Ristow's alleged breach of the agreement. The matter was submitted to the court upon motions for summary judgment.

## STANDARD OF REVIEW AND RULES OF INTERPRETATION

Since this case was decided by summary judgment motions and it centers upon the interpretation of an employment agreement, some legal fundamentals must be established. Summary judgment is appropriate when reasonable and all procedures are followed:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bracken v. Dixon Industries, Inc.,* 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

Contract questions are often subject to summary judgment. Where there are no disputed material facts, the determination of whether a party breached a contract is a question of law and is appropriate for summary judgment. *City of Topeka v. Watertower Place Dev. Group,* 265 Kan. 148, 154, 959 P.2d 894 (1998). This court is not restricted by the interpretation of the employment agreement rendered by the district court. *Unrau v. Kidron Bethel Retirement Services, Inc.,* 271 Kan. 743, 763, 27 P.3d 1 (2001) (an appellate court may construe written contract and determine its

legal effect regardless of construction given a written contract by district court).

## COVENANTS NOT TO COMPETE IN KANSAS LAW

Under Kansas law, covenants not to compete which are contained in employment contracts are strictly construed against employers. Therefore, we must construe this agreement strictly against AGH. An important case on this issue is *Weber v. Tillman,* 259 Kan. 457, 913 P.2d 84 (1996). It teaches us that we must consider the circumstances of the parties as well as public concerns when evaluating such contract provisions:

"A noncompetition covenant ancillary to an employment contract is valid and enforceable if the restraint is reasonable under the circumstances and not adverse to the public welfare. [Citations omitted.] The rationale for enforcing a noncompetition covenant is based on the freedom of contract. [Citation omitted.]" *Weber,* 259 Kan. at 462.

In *Weber,* the Supreme Court examined four factors in determining whether to enforce a covenant not to compete in an employment contract setting. In addition to questioning the reasonableness of the time and territory restrictions in the covenant, the court considered whether the contract protected a legitimate business interest, imposed an undue burden on the employee, or injured the public. 259 Kan. at 461-75.

We turn first to AGH's legitimate business interests. "[I]t is well settled that only a legitimate business interest may be protected by a noncompetition covenant. If the sole purpose is to avoid ordinary competition, it is unreasonable and unenforceable. [Citations omitted.]" *Weber,* 259 Kan. at 462. Prior Kansas cases have held that legally sufficient interests in the setting of an employment agreement include trade secrets and customer contacts or relationships. See *Heatron, Inc. v. Shackelford,* 898 F. Supp. 1491, 1500 (D. Kan. 1995); *Eastern Distributing Co., Inc. v. Flynn,* 222 Kan. 666, 671-74, 567 P.2d 1371 (1977).

Ristow responds that AGH is precluded from raising this issue on appeal as it did not make this argument before the district court. Ristow also maintains that this particular issue was not the subject of discovery completed by the parties. AGH counters that it has

consistently maintained that Ristow violated paragraph 1 of the agreement. The district court found that paragraph 1 was not supported by a legitimate business purpose.

AGH claims that the covenant not to compete sought to protect AGH's business interest in the specialized training provided to Ristow. The facts provide that AGH revised its agreement, in part, to deal with the problem it had with Intrust hiring AGH employees from the employee benefits area to work for Intrust and NestEgg. According to AGH, the language concerning "centers of influence" and "key personnel" was added to address the problem.

The district court found the training and knowledge provided by AGH to Ristow did "not rise to the level of specialized knowledge which constitutes a legitimate business purpose which would support the restrictions on subsequent employment contained in Paragraph 1 of the Employment Agreement." In a separate finding, the district court added that Ristow's knowledge "was not in the category of client lists or trade secrets, and that [Ristow] was clearly not a key employee of plaintiff, not like one of the accountants."

For support of its contention that Kansas law recognizes that specialized training is a legitimate business interest, AGH turned solely to *Weber*, where our Supreme Court stated:

*"Other jurisdictions have recognized*, in addition to customer contacts, that an employer has a legitimate business interest to protect in the *special training* of employees, trade secrets, confidential business information, loss of clients, good will, reputation, seeing that contracts with clients continue, and referral sources. [Citations omitted.]" (Emphasis added.) 259 Kan. at 467.

AGH does not offer any Kansas law recognizing a legitimate business purpose in the special training of employees; however, it maintains an analogous factual situation was present in *Borg-Warner Protective Services v. Guardsmark, Inc.,* 946 F. Supp. 495 (E.D. Ky. 1996), *aff'd* 156 F.3d 1228 (6th Cir. 1998).

We are not persuaded that *Borg-Warner* advances AGH's cause. Borg-Warner and Guardsmark were competitors in the private security guard industry; each company was slotted within the five largest private security guard firms in the country. Guardsmark recruited and placed security guards at a client's facility. Guardsmark employees were required to enter into a covenant not to

compete by either performing or hiring others to perform security services at the "site, place or location" where the employee performed security services within the preceding 12 months.

Subsequently, Borg-Warner obtained the contract for the facility where Guardsmark had security guards in place and sought to hire the Guardsmark security guards for work at the facility. Borg-Warner further promised to represent the security guards should Guardsmark seek to enforce its noncompete clause. The court upheld the noncompete clauses after balancing the legitimate interest of the employer with the hardship to the employee. The court found that the covenant had been drawn to minimize hardship to the employee as it *was specific only to the client site where the employee worked* and for which Guardsmark had trained the employee. Further, the employees found other employment. 946 F.Supp. at 502.

Conversely, the language in paragraph 1of Ristow's agreement with AGH was not specific to only one client site. Instead, Ristow was precluded from seeking employment with all clients and centers of influence of AGH. Furthermore, unlike the facts in *Borg-Warner*, AGH did not establish that Ristow could easily locate comparable employment outside of the confines of the contractual language.

In determining whether an employer had a legitimate business purpose in specialized training provided to an employee to support a restrictive covenant, courts have looked closely at the type of training provided by the employer. In *Brunswick Floors, Inc. v. Guest*, 234 Ga. App. 298, 506 S.E.2d 670 (1998), the employer sought to enjoin an employee from working for a competitor, maintaining he had absorbed costs associated with the employee receiving training in "advanced" carpet installation in two off-site locations. The court stated certain key legal tests to determine the efficacy of "training" as a legitimate interest: the " 'employer's time and monetary investment in the employee's skills in the development of [employee's] craft' "; and whether "employers spent large sums of money, and employees received extensive training." 234 Ga. App. at 300. The court found that the employee's minimal

training did not outweigh the substantial harm of the noncompete clause. 234 Ga. App. at 301.

Also, courts are likely to uphold the value of employee training when it is combined with other factors weighing in favor of a protectable business interest. See *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 245, 383 N.W.2d 29 (1986) (in distinguishing between "ordinary" and "unfair" competition, courts frequently focus on employee's opportunity to appropriate employer's goodwill by initiating personal contacts with employer's customers). For example, in *Vantage Technology, LLC v. Cross*, 17 S.W.3d 637, 646-47 (Tenn. Ct. App. 1999), *app. denied* April 17, 2000, the court found the employer had a legitimate business interest protectable by a noncompete clause when the employee had not only received training but also had a "special relationship" with clients and was in receipt of confidential information.

During the course of her employment with AGH where she received on-the-job training, Ristow also attended training sessions or conferences off-site. The off-site training provided to Ristow, which was also received by other AGH employees, included a software training program spanning several days in length, a 2-day legislative update conference, two 2-hour webcast training sessions, and two user group meetings. AGH absorbed all of the costs associated with this training, including travel and lodging, estimated to be approximately $7,479.

Thus, based on the uncontroverted facts, the nonexclusive training provided by AGH to Ristow, over an approximate 7-year period of employment, was valued at $7,479. AGH has not claimed Ristow's skills were unique. Indeed, Ristow's duties were absorbed by existing staff once her employment was terminated. See *Nigra v. Young Broadcasting*, 177 Misc. 2d 664, 666, 676 N.Y.S.2d 848 (1998) ("it is worth noting that 'unique services' is a very slim reed which has never actually served as the sole basis for judicial enforcement of an anti-competition clause"). Overall personnel costs in the area in which Ristow worked decreased since her departure. The district court did not err in determining that the training and knowledge acquired by Ristow did not constitute a legitimate busi-

ness purpose to such an extent that it supported the restrictions on subsequent employment found in paragraph 1.

Our Supreme Court compels us to view these issues carefully. Employees must necessarily take knowledge with them when they change jobs:

> "A person who leaves the employment of another has the right to take with him all the skill he has acquired, all the knowledge that he has obtained, and all the information that he has received, so long as nothing is taken that is the property of the employer. . . . Skill and knowledge acquired or information obtained cannot be left behind so long as those things exist within the mind of the employee. All that knowledge, skill and information, except trade secrets, become a part of his equipment for the transaction of any business in which he may engage, just the same as any part of the skill, knowledge, information or education that was received by him before entering upon the employment. Those things cannot be taken from him, although he may forego them, forget them, or abandon them." *Garst v. Scott,* 114 Kan. 676, 679, 220 Pac. 277 (1923).

Ristow was a supervisor who received periodic training that kept her up-to-date in her field of tax regulation of employee benefit groups. Neither her duties nor her training appear to be out of the ordinary or unique. The fact stipulations show no special relationship between Ristow and any AGH clients, nor are there any allegations that she has conveyed any trade secrets that would be the property of her former employer, AGH. The district court properly decided that it is unreasonable to enforce the covenant not to compete under these circumstances. Quite simply, AGH has no legitimate business interest here that warrants a reversal of the district court.

In stark contrast, if we choose to enforce this clause, Ristow could work virtually nowhere. Ristow was informed that, under the definition of client and center of influence, "there were very few places Ristow could become employed." Although not addressed by the district court, Ristow was precluded from accepting employment not only from the clients and centers of influence of AGH but also with "Koch Industries and its affiliated companies." This is the only place in the agreement where Koch Industries appears. Moreover, the agreement does not define or describe the "affiliated companies" of Koch Industries. Without any explanation, there is no basis for this additional company and its "affiliated

companies" to be included in the agreement. As it is stated in *Weber,* 259 Kan. at 466: "[R]estrictions must be no greater than necessary to protect the employer's interests." We agree with the conclusions made by the district court when granting summary judgment to Ristow.

Next, AGH maintains that the question of whether Ristow's specialized training constituted a legitimate business interest was one of fact precluding summary judgment. As a matter of law, the district court judge concluded:

"11. It takes special skill and knowledge to work on employee benefit plans, which is comparable to working with the Internal Revenue Code, and in some respects is similar to working with the Uniform Commercial Code and some very specialized laws and sets of regulations that exist. It takes a special kind of personality to deal with those things."

While the foregoing suggests the trial judge may have relied on past experiences in arriving at his conclusion, ultimately it appears that his decision that Ristow's training and knowledge did not rise to the level of a legitimate business interest was supported by the court's findings of facts. See *Vasquez v. Ybarra,* 150 F. Supp. 2d 1157, 1161 (D. Kan. 2001) ("[W]hen confronted with a fully briefed motion for summary judgment, the court must determine 'whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.' ") (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 91 L.Ed.2d 202, 106 S.Ct. 2505 [1986]). We believe that is what the judge was doing here, and his is not erroneous.

Because we conclude that the covenant not to compete is unenforceable, the issue raised by AGH concerning whether the non-competition clause survived the termination of the contract is moot. Also, whether AGH could seek punitive damages need not be addressed since, by definition, that arises from a fraud claim based upon a breach of the noncompetition clause. Since we have ruled that clause is unenforceable, there can be no fraud claim.

Affirmed.