(205 P.3d 1283)

No. 99,941

ROBIN E. POLLOCK, *Appellant*, v. CRESTVIEW COUNTRY CLUB ASSOCIATION, *Appellee*.

Opinion filed May 1, 2009.

*Mark G. Ayesh* and *Ray E. Simmons*, of Ayesh Law Offices, of Wichita, for appellant.

*Stephen E. Robison* and *Lyndon W. Vix*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellee.

Before BUSER, P.J., ELLIOTT and GREEN, JJ.

BUSER, J.: Robin E. Pollock sued the Crestview Country Club Association (Crestview) after he was expelled from membership in the club because of his loud and offensive language while in the Men's Grill. The district court granted summary judgment to Crestview and Pollock appeals. We affirm.

### Factual and Procedural Background

Pollock joined Crestview in the early 1980's. He received written censures in 1992 and 1995 for loud and offensive language. On each occasion Pollock was warned that such behavior could result in expulsion from the club.

As set forth in Pollock's pleading below,

"[o]n March 8, 2006, [he] was in the Mens' Grill at [Crestview] seated at a table by himself having a cocktail. When Dennis Gillen walked into the Mens' Grill, [he] called [Gillen] a condescending asshole. . . . Gillen did not respond nor did he complain. Another member, Grant Nutter, filed a complaint about [Pollock's] conduct."

Gillen was the immediate past-president of Crestview. As president, Gillen had supported a controversial capital campaign which Pollock opposed. Pollock admitted in his deposition that he was unhappy, angry, and raised his voice when making the comment to Gillen.

On April 7, 2006, Greg Harman, the president of Crestview informed Pollock by letter that Crestview's board was "conducting an investigation to determine if [Crestview's] rules and regulations, specifically Article I, Section O 'General Conduct and Appearance,' have been violated and, if so, what sanction as authorized by [Crestview's] rules and regulations Article II, Section D and Article XI of the Bylaws may be appropriate." Harman gave Pollock the "opportunity to respond in writing or by personal meeting with me or the Board at [Crestview] at a mutually convenient date and time so that we may complete our investigation."

Article I, Section O of Crestview's rules and regulations provided: "Crestview is a family club. Loud, offensive conduct or appearance by members or their guests will not be tolerated." Article II, Section D of the rules and regulations stated in relevant part:

"Violation of any Crestview rule by members may result in discipline up to and including expulsion from Crestview, depending on the nature and seriousness of the violation, as determined by the Board of Directors. . . . If it is determined that a violation has occurred, except in instances where more serious measures, including immediate expulsion, are necessary, disciplinary action normally will take the following steps:

1. First Violation—Verbal warning
2. Second Violation in 24 months—Written warning
3. Third Violation in 24 months—Warning letter from the Board of Directors
4. Fourth Violation in 24 months—Suspension of use of [Crestview] for 60 days
5. Fifth Violation in 24 months—Expulsion from Crestview."

Article XI, Section 3 of the bylaws set forth in relevant part: "The Board of Directors at any Regular or Special Meeting may suspend or expel for cause any member of [Crestview] upon a (three-fourths)-affirmative vote of the Directors."

On April 26, 2006, Harman wrote to Pollock again. In the letter, Harman memorialized a telephone conversation of April 8, 2006, in which Pollock had "stated, among other items, that you would respond to the incident report through your attorney, Mark Ayesh." Harman told Pollock that because "no response has been received from you or Mr. Ayesh," the board was extending the response time for another week.

On May 2, 2006, Ayesh responded in a letter to Harman. Ayesh contended "the incident is being exaggerated" and that "[m]embers are entitled to have an opinion and express it even if it is critical of the governance of [Crestview.]" Ayesh also identified "several incidents in the past" by other members "which probably should have received some attention, but did not."

On May 12, 2006, Harman wrote to Ayesh, requesting "advisement from Mr. Pollock of any members, guests, staff, etc. that he requests be interviewed concerning the reported incident." On May 18, 2006, Ayesh responded by letter and requested an interview of Pollock. Ayesh also mentioned Rick Putman, who was present during the incident: "We understand you have interviewed Rick Putman. Reports from Mr. Putman to our client indicate Mr. Putman is a witness favorable to Mr. Pollock."

On May 24, 2006, Harman wrote to Ayesh that "Mr. Putman's observations and information, whether favorable or not to Mr. Pol-

lock, will be given due consideration like all other observations and information concerning the reported incident." Putman testified in his deposition that a board member, Bill Cary, called him a few days after the incident, and that he spoke to Cary in the belief that Cary was "investigating the situation." Putman was never formally interviewed by the board committee investigating the incident. In his own deposition, Cary denied calling Putman.

On July 7, 2006, Pollock appeared with Ayesh for an interview by Crestview's counsel, Stephen Robison. Bob Dool, a member of the board committee investigating the incident, was also present. The interview was recorded, and transcripts were prepared.

On July 24, 2006, the board met and voted to expel Pollock from membership in Crestview.

Pollock then sued Crestview claiming breach of contract, breach of the implied duty of good faith and fair dealing, fraud, deprivation of due process, and civil conspiracy. Both parties moved for summary judgment. Pollock's motion was denied. In its order granting judgment to Crestview, the district court found that Pollock had abandoned certain claims, and that his "sole remaining claim sounds in breach of contract." As characterized by the district court: "[Pollock] claims [Crestview] breached its contract with him by failing to provide due process in his expulsion and further claims [Crestview] engaged in bad faith and unfair dealings in its expulsion of him."

The district court rejected Pollock's arguments, concluding that Crestview had provided Pollock with "due process" and that "there is no evidence of bad faith on the part of [Crestview]." The judge also stated from the bench: "[I]t just appears . . . this private club made a decision. It's based on evidence that they considered and a judgment [was] made by the Board. The court's not going to substitute its judgment for that of the Board." Pollock appeals.

On appeal, Pollock argues violation of due process rights including "substantive due process," breach of contract, and breach of the implied duty of good faith and fair dealing.

### Due Process

Our standard of review in summary judgment cases is well known:

" ' " 'The [district] court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' " ' [Citations omitted.]" *Korytkowski v. City of Ottawa*, 283 Kan. 122, 128, 152 P.3d 53 (2007).

Pollock draws our attention to facts not relied upon by the district court, but he does not dispute those facts the district court found to be uncontroverted. Summary judgment was appropriate if the facts Pollock now identifies, some of which appear to be controverted, were not material. See *Allen, Gibbs & Houlik v. Ristow*, 32 Kan. App. 2d 1051, Syl. ¶ 1, 94 P.3d 724 (2004).

Pollock first contends Crestview violated his substantive due process rights to "protection from arbitrary action." For support, Pollock cites *Darling v. Kansas Water Office*, 245 Kan. 45, 51, 774 P.2d 941(1989), which discussed both substantive and procedural aspects of constitutional due process rights.

While "[m]any cases dealing with social club expulsion talk in terms of due process . . . [i]n the traditional sense, due process is protection against state action." *Hartung v. Audubon Country Club, Inc.*, 785 S.W.2d 501, 503 n.1 (Ky. App. 1990). Disputes between private social clubs and their members over expulsion do not engage constitutional due process protections, either substantive or procedural. See *Bartley v. Augusta Country Club, Inc.*, 254 Ga. 144, 326 S.E.2d 442 (1985); *Rose v. Zurowski*, 236 Ga. App. 157, 160, 511 S.E.2d 265 (Ga. App. 1999); *Garvey v. Seattle Tennis Club*, 60 Wash. App. 930, 935, 808 P.2d 1155 (1991). "Embedded in our Fourteenth Amendment jurisprudence is a dichotomy between state action, which is subject to scrutiny under the Amendment's Due Process Clause, and private conduct, against which the Amendment affords no shield, no matter how unfair that conduct

may be." *NCAA v. Tarkanian,* 488 U.S. 179, 191, 102 L. Ed. 2d 469, 109 S. Ct. 454 (1988).

Pollock has not shown any state action which caused his expulsion from Crestview. As a result, constitutional due process protections are not implicated. Although the district court found that Pollock was afforded due process, in context this meant the process due to Pollock under terms of the contract with Crestview.

### Breach of Contract

Turning now to Pollock's contract claim, he contends Crestview failed to comply with its rules, regulations, and bylaws during the disciplinary process.

" 'To the extent this issue involves an interpretation of written documents, this court's standard of review is unlimited. *City of Topeka v. Watertower Place Dev. Group,* 265 Kan. 148, 153, 959 P.2d 894 (1988) ('The interpretation and legal effect of written documents are matters of law upon which our standard of review is unlimited.'). Otherwise, the summary judgment standard of review . . . is applicable.' " *State ex rel. Graeber v. Marion County Landfill, Inc.,* 276 Kan. 328, 343-44, 76 P.3d 1000 (2003).

Moreover, "[w]here there are no disputed material facts, the determination of whether a party breached a contract is a question of law and is appropriate for summary judgment." *Allen,* 32 Kan. App. 2d 1051, Syl. ¶ 1.

"The relationship between a social club and its members is one of contract." *Spokoiny v. Washington State Youth Soccer Ass'n,* 128 Wash. App. 794, 801, 117 P.3d 1141 (2005). The rules, regulations, and bylaws of social clubs generally establish the terms of such contracts. See *Post v. Belmont Country Club, Inc.,* 60 Mass. App. 645, 647, 805 N.E.2d 63 (2004); *Rowland v. Union Hills Country Club,* 157 Ariz. App. 301, 304, 757 P.2d 105 (1988). The "bylaws, and rules of private organizations create a legally enforceable agreement in the nature of a contract between the organization and the member because of corresponding mutual obligations—by the member to follow the rules of the organization, and by the organization to fairly apply those rules." *King v. Grand Chapter of Rhode Island,* 919 A.2d 991, 998 (R. I. 2007).

Courts generally defer to social clubs on questions of whether a member exhibits appropriate conduct at the club. As explained by the District Court of Appeals of Florida:

"[E]ach group has its own pattern of conduct and activity which it approves, and which it finds enjoyable and inoffensive to its members. Actions, conduct or activity which might be inoffensive to one group might be frowned upon by another. If the courts should be called upon to determine the reasonableness of charges for expulsion, then the action and decorum of the members of all clubs would of necessity be measured by the standard of action the particular Court hearing the controversy might himself or themselves find offensive or inoffensive, as the case might be." *State ex rel. Barfield v. Florida Yacht Club*, 106 So. 2d 207, 211 (Fla. Dist. App. 1958).

The leading Kansas case, *Brooks v. Petroleum Club of Wichita*, 207 Kan. 277, Syl. ¶ 1, 484 P.2d 1026 (1971), instructs that courts generally should defer to social clubs in matters of membership discipline provided there is substantial compliance with the social club's bylaws:

"Courts will not interfere and take jurisdiction of cases involving the disciplining, suspension or expulsion of members of a private social club, organized as a nonprofit corporation where it appears that disciplinary proceedings are in substantial compliance with the by-laws of the club, and such by-laws are reasonable, consistent with the charter of the organization and not in violation of fundamental concepts of due process of law."

The reference in *Brooks*, 207 Kan. 277, Syl. ¶ 1, to bylaws "not in violation of fundamental concepts of due process of law," does not derive from the United States or Kansas Constitutions. Rather, this due process is based on the contract between the social club and its members. As our Supreme Court has stated, "[p]roceedings based upon proper bylaws of a voluntary association, constitute due process of law as to members of such association. [Citation omitted.]" 207 Kan. at 283. In any event, Pollock does not argue that Crestview's rules, regulations, and bylaws violated fundamental concepts of due process. His primary complaint is that Crestview failed to comply with those established procedures.

Pollock insists that "[f]irst and fundamentally, Crestview's Board of Directors did not follow *Robert's Rules of Order* as required by its Bylaws. According to *Robert's Rules of Order*, once a motion

has been decided, the same or substantially the same motion cannot be heard during the same session." The board's minutes show the first vote on expulsion fell one vote short of the three-fourth's majority required under the bylaws. After further discussion, a second motion was made and seconded, whereupon the board voted to expel Pollock.

Our Supreme Court stated in *Brooks* that "close adherence to the form of legal procedure is not required" when a private social club exercises its discretionary powers. 207 Kan. 277, Syl. ¶ 3. In the present case, the board voted by the requisite three-fourth's majority to expel Pollock. The fact that a prior vote had failed went to the "form" of the proceeding and did not violate "those essentials which make for justice." 207 Kan. 277, Syl. ¶ 3; see also *Blodgett v. University Club*, 930 A.2d 210, 227 (D.C. Cir. 2007) ("[A] member [of a social club] facing discipline is not entitled to the same type of process afforded under our civil and criminal justice systems.").

Assuming strict adherence to parliamentary procedure was required, however, Crestview's bylaws mention *Robert's Rules of Order* in Article II, Section 10, which governs annual and special meetings of members, not in Article III, which governs meetings of the board. Under Crestview's bylaws, expulsion was by a vote of the board, not the membership generally.

Pollock next contends that Crestview failed to provide progressive discipline under Article II, Section D of the rules and regulations. Once again, Pollock's argument goes to form. Even if the rules and regulations were strictly applied, however, they provided the board with discretion to depart from the progressive discipline scheme "in instances where more serious measures, including immediate expulsion, are necessary."

Pollock further objects to a June 20, 2006, meeting of the board because no minutes were taken. Although Crestview's bylaws require "a record of all meetings of . . . the Board," the bylaws do not specify the form of that record. The minutes of the July 24, 2006, meeting memorialized that "[t]he investigating committee report had been previously presented at a Board meeting on July 20, 2006." Pollock does not explain how the record fell short of the

substantial compliance required by *Brooks*, nor does he argue that separate minutes for the July 20, 2006, meeting were essential for justice in his case. Issues not briefed are deemed waived or abandoned. *Cooke v. Gillespie*, 285 Kan. 748, 758, 176 P.3d 144 (2008).

Pollock also disputes the severity of his behavior, contending his remark was acceptable conduct in the Men's Grill at Crestview. This situation is analagous to *Brooks*, where the plaintiff was expelled from a social club for abusive language and excessive drinking. Instead of denying "the conduct with which he was charged," the plaintiff asserted "he should be able to pursue that conduct if he so desired." 207 Kan. at 281. Thus, the only issue framed for the courts was "whether the established code of conduct of the Club should be replaced by [the plaintiff's] own code of conduct." 207 Kan. at 281.

Our Supreme Court refused to address that issue, quoting *Johnson v. Prince Hall Grand Lodge*, 183 Kan. 141, 145, 325 P.2d 45 (1958): " 'The question of whether the conduct of the plaintiffs in the case at bar was such as to warrant their suspension from the Grand Lodge is not before us. That issue is a matter of internal government and discipline of the order and is for its final determination.' " *Brooks*, 207 Kan. at 283. Following our Supreme Court's guidance, we will not decide whether Pollock's conduct was acceptable behavior in the Men's Grill.

The remaining details of the investigation Pollock recites on appeal, such as whether Putman's opinion of his behavior was made known to the board, are not material to the conclusive issues of the case. See *Bartal v. Brower*, 268 Kan. 195, 198, 993 P.2d 629 (1999). Although Putman did not consider Pollock's behavior to be "unusual for the men's grill," Crestview's rules, regulations and bylaws empower the board, not individual members, to make that determination.

In summary, the board notified Pollock of the specific accusation made against him and the particular rule or regulation he allegedly violated. Pollock was informed that an investigation was underway to determine if his conduct merited discipline which could include a warning, suspension, or expulsion from Crestview. Pollock and his counsel were afforded the opportunity to present Pollock's ver-

sion of the incident and defend against the allegation. Indeed, the fairness exhibited in the disciplinary process was noted by Pollock in his deposition when he was asked if there was "anything else that you, through your lawyer, asked Crestview to do in the investigation that they didn't do?" Pollock responded: "Not that I'm aware of at this time."

The record reflects that Crestview conducted the disciplinary proceedings in substantial compliance with the bylaws, rules, and regulations of the club. Accordingly, we hold the district court did not err in finding that Pollock failed to show a breach of contract.

### Implied Duty of Good Faith and Fair Dealing

Turning now to the implied duty of good faith and fair dealing, Kansas courts imply such a duty in all contracts other than those for employment-at-will. *Daniels v. Army National Bank*, 249 Kan. 654, 658, 822 P.2d 39 (1991); *Morriss v. Coleman Co.*, 241 Kan. 501, Syl. ¶ 2, 738 P.2d 841 (1987). Where there are no disputed material facts, the determination of whether a party breached the duty of good faith and fair dealing is also a question of law appropriate for summary judgment. See *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 174-75, 872 P.2d 252 (1994); *Allied Mut. Ins. Co. v. Moeder*, 30 Kan. App. 2d 729, 734, 48 P.3d 1 (2002).

Pollock argues only that Crestview "expelled him . . . without just cause." We are unable to distinguish this claim from Pollock's assertion that his behavior was acceptable within the Men's Grill. The board investigated the matter, voted, and concluded that Pollock's conduct merited expulsion from Crestview. Because "no grounds exist[ed] for judicial questioning" of the "regularity or sufficiency" of that decision, summary judgment was appropriate. *Brooks*, 207 Kan. at 283.

Affirmed.