(85 P.3d 211)

No. 90,582

RICHARD W. VERNON, Trustee of the Richard W. Vernon Trust Dtd. May 1, 1997, RICHARD W. VERNON, Successor Trustee of the Dorothy K. Vernon Trust Dtd. June 16, 1996, and CARL A. VERNON, JR., Individually, *Appellees/Cross-appellants,* v. COMMERCE FINANCIAL CORPORATION, a Kansas Corporation, *Appellant/Cross-appellee.*

Opinion filed March 5, 2004.

*Kevin M. Fowler* and *John C. Frieden,* of Frieden, Hayes & Forbes, of Topeka, for appellant/cross-appellee.

*W. Joseph Hatley*, of Lathrop & Gage L.C., of Overland Park, for appellees/cross-appellants.

Before RULON, C.J., HILL, J., and BRAZIL, S.J.

RULON, C.J.: Commerce Financial Corporation (CFC), appeals the district court's decision denying CFC's motion to dismiss an appraisal dispute arising from dissenting stockholders and awarding interest on the judgment in favor of the stockholders. Stockholders, Richard W. Vernon, Trustee of the Richard W. Vernon Trust dated May 1, 1997, Richard W. Vernon, Successor Trustee of the Dorothy K. Vernon Trust dated June 16, 1996, and Carl A. Vernon, Jr. (collectively the Vernons), cross-appeal the district court's decision ordering them to pay for half of the appraisal cost. We affirm.

The Vernons collectively owned 28,749 shares of stock in CFC. Carl Vernon is a resident of Kansas.

On March 5, 2001, CFC stockholders voted on a plan to merge with New Commerce Financial Corporation. CFC is a Kansas Corporation and the parent company of Commerce Bank and Trust. The Vernons had given written notice of their objection to the merger. The Vernons did not vote any of their shares in favor of the merger at the March 5, 2001, meeting. However, the merger received the requisite number of votes and became effective on July 13, 2001. CFC timely notified the Vernons of the merger under K.S.A. 2003 Supp. 17-6712(b).

Eventually, the Vernons demanded in writing CFC pay them the fair value of their stock pursuant to 17-6712(b). CFC and the Vernons could not agree on the price per share, and on September 28, 2001, the Vernons filed a petition for an appraisal to determine the value of the stock under K.S.A. 2003 Supp. 17-6712(c).

On October 12, 2001, CFC filed a verified list, under K.S.A. 2003 Supp. 17-6712(d), consisting of only the Vernons as shareholders who had demanded payment for their shares with no agreement reached as to the value. On November 30, 2001, the district court ordered the parties to submit names of appraisers. The court noted "that [the Vernons] have complied in all respects with the procedural prerequisites of K.S.A. 17-6712 to the filing of this action and are therefore entitled to the valuation of and pay-

ment for their shares under the provisions of the statute as of July 13, 2001." Additionally, the court ordered the Vernons to submit all of their certificates evidencing their ownership of stock to the clerk of the court by December 14, 2001. See K.S.A. 2003 Supp. 17-6712(g) (at time of appraiser's appointment, court shall require stockholders to submit certificates of stock to clerk of court).

The Vernons gave the stock certificates to Arizona counsel. However, the certificates were not filed due to Arizona counsel's oversight until April 9, 2002, approximately 4 months after the deadline had passed. On April 15, 2002, CFC filed a motion to dismiss the appraisal proceeding based on the Vernons' noncompliance with the court's order and K.S.A. 2003 Supp. 17-6712(g).

The parties met with the court-appointed appraiser, Christopher Hargrove, after the certificates had been filed. CFC set the value of the stock at approximately $147 per share, determined from the Bank Advisory Group (BAG) and RSM McGladrey reports. The Vernons set the price as high as approximately $285 per share, determined by their appraiser, Swords Associates, Inc. Hargrove, the court-appointed appraiser, set the price at $188 per share.

The district court denied CFC's motion to dismiss, adopted a value of $188 per share, set the interest on the total judgment at 10% per annum from July 13, 2001, to the date of payment, and assigned appraisal costs to both parties making each responsible for approximately $21,161.

CFC filed a motion to alter or amend the judgment, requesting the district court to specifically apply postjudgment interest under K.S.A. 2003 Supp. 16-204(d) and (e)(1). The district court amended its decision and, while maintaining the 10% prejudgment interest per annum from the time of merger to entry of judgment, lowered the postjudgment interest due to 5.25% per annum. CFC appealed the court's failure to dismiss and the interest assigned to be paid on the final amount owed. The Vernons cross-appealed the court's order to pay half of the appraised costs.

## Late Filing of Stock Certificates

CFC contends the district court erred by not dismissing the appraisal proceeding initiated by the Vernons because the stock cer-

tificates were not filed with the clerk of the court in a timely fashion.

K.S.A. 2003 Supp. 17-6712(g) provides:

"At the time of appointing the appraiser or appraisers, the court shall require the stockholders who hold certificated shares and who demanded payment for their shares to submit their certificates of stock to the clerk of the court, to be held by the clerk pending the appraisal proceedings. If any stockholder fails to comply with such direction, the court shall dismiss the proceedings as to such stockholder."

The district court ordered submission of the Vernons' certificates on November 30, 2001. The deadline was December 14, 2001. Hargrove was appointed on January 4, 2002. The Vernons' Arizona counsel filed the certificates on April 9, 2002. CFC filed its motion to dismiss on April 15, 2002. Obviously, there was some departure from the statutory procedure prescribed.

K.S.A. 2003 Supp. 17-6712, requiring appraisal of stock value, should be liberally construed for the protection of the dissenting shareholders. See 18A Am. Jur. 2, Corporations § 816, p. 688: "Although . . . a liberal construction does not call for an abandonment of orderly procedure prescribed by statute," the oversight here was caused not by the Vernons' noncompliance but by their counsel's error. As we understand, the district court's ruling was based on the rationale established and factors relating to default judgments. So our standard of review is abuse of discretion. See *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, Syl. ¶¶ 1-4, 523 P.2d 351 (1974).

The issue of default judgments is cloaked in a balancing of interests: judicial economy and expediency versus the preference of achieving finality in litigation based upon the merits of the case. Here, the Vernons believed CFC was undervaluing their stocks and there is a statutory scheme specifically established to protect such interested parties' rights pursuant to K.S.A. 2003 Supp. 17-6712. To rule in CFC's favor on the motion to dismiss for a procedural glitch would have meant the Vernons would receive approximately $1,178,709 less than what was ultimately determined to be the fair market value.

We are satisfied the district court did not err when it decided this issue on evidence provided by an objective, independent appraiser rather than on counsel's error. See *Jenkins v. Arnold*, 223 Kan. 298, 573 P.2d 1013 (1978) (distinguishing reckless indifference or inexcusable neglect from unintentional inadvertence or excusable neglect, the latter including failure of counsel to answer). CFC was not substantially prejudiced. The stock certificates, which were filed several months after the appointment of Hargrove, were filed with the clerk of the court before Hargrove's appraisal process started.

The submission of stock certificates "is considered necessary in order to prevent dissenters from giving themselves a 30-day option to take payment if the market price of the shares goes down, but sell their shares on the open market if the price goes up." 18A Am. Jur. 2d, Corporations § 825, p. 696-97. The Vernons, however, did not have the certificates themselves. Additionally, by the time CFC had filed its motion to dismiss, the certificates had been submitted to the clerk of the court and the Vernons had spent considerable time and money on their own appraisal and expenses. Obviously, the Vernons were, in fact, going through with the appraisal proceeding rather than merely holding out for stock prices to increase in value. See *Wichers v. Solomon Valley Feed Lot, Inc.*, 10 Kan. App. 2d 486, 488, 704 P.2d 383 (1985) (dissenting stockholders perfected appraisal election notwithstanding failure to submit stock certificates; court correctly disallowed stockholders' rescission on that basis).

Additionally, Arizona counsel, William Clarke, spoke regularly with CFC's counsel, John Frieden. On one such occasion both counsel discussed the specific procedure for filing certificates. Both Clarke and Frieden agreed Frieden would receive the stock certificates and handle the filing with the clerk of the court. Clarke admitted to the district court he "forgot to send the stock certificates to Mr. Frieden for [Frieden] to follow through and file with the Court as indicated." Here, the failure of counsel is that type of excusable inadvertence or neglect common to all who share the ordinary frailties of mankind. See *Jenkins*, 223 Kan. at 300.

We conclude the district court did not err in denying CFC's motion to dismiss for failure to strictly comply with 17-6712(g) regarding the filing of the stock certificates.

## Prejudgment Interest

Next, CFC contends the district court erred in awarding 10% per annum prejudgment interest. CFC argues the amount of interest was in error and now contends any application of K.S.A. Chapter 16 to this appraisal proceeding was erroneous.

The standard of review for allowance of prejudgment interest is a matter of judicial discretion subject to reversal only upon a showing of abuse of discretion. *Blair Constr., Inc. v. McBeth*, 273 Kan. 679, 689, 44 P.3d 1244 (2002). Appellate review of a district court's statutory interpretation is a question of law requiring unlimited review. *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003).

The controlling statute is K.S.A. 2003 Supp. 17-6712(h), which states in pertinent part:

"The court, on application of any party in interest, shall determine the amount of interest, if any, to be paid upon the value of the stock of the stockholders entitled thereto."

K.S.A. 2003 Supp. 17-6712(h) does not designate the amount of interest or limit the time upon which interest is to be accrued. As such, our standard of review is abuse of discretion. See *Moore v. New Ammest, Inc.*, 6 Kan. App. 2d 461, 472-73, 630 P.2d 167 (1981), *overruled in part on other grounds Arnaud v. Stockgrowers State Bank*, 268 Kan. 163, 992 P.2d 216 (1999). *Moore* instructs that under 17-6712, the district court has the discretion to determine the rate of interest to be awarded, not whether interest will be awarded. 6 Kan. App. 2d at 473.

Interest is " 'to fairly compensate plaintiffs for their inability to use the money during the period in question.' [Citation omitted.]" 6 Kan. App. 2d at 472. Given the statutory language and the rationale for awarding interest on dissenting stockholders' stock values, we conclude the district court had discretion to assign interest from the time of the merger until CFC paid the Vernons because

the Vernons would not be able to use their money from the date of the merger until the judgment was satisfied.

The *Moore* court held:

"The amount or rate of interest to be awarded must not be less than the interest rate payable as provided by K.S.A. 16-201 . . . during the pendency of this action . . . . The maximum rate of interest is that amount which a reasonable and prudent investor would have realized on the value of his [or her] stock as determined by the court from the statutory payment date described in K.S.A. 17-6712(b) *until entry of judgment.*" (Emphasis added.) 6 Kan. App. 2d at 473.

Here, the district court amended the judgment applying *Moore*'s principles after CFC's motion requesting K.S.A. Chapter 16 to be applied.

Arguably, the district court should have made a finding of fact as to what rate of interest a prudent investor could have earned on the money during the pendency of the appraisal proceeding. See *Moore*, 6 Kan. App. 2d at 472 (citing Delaware corporate law). Importantly, the *Moore* court specifically referred to K.S.A. 16-201 and directed that a district court should follow such statute when assigning an interest rate. 6 Kan. App. 2d at 473. As such, CFC's argument that there is no relationship between K.S.A. Chapter 16 and K.S.A. Chapter 17 fails.

K.S.A. 16-201 provides, in pertinent part: "Creditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due." The record indicates the district court applied both K.S.A. 16-201, which governs prejudgment interest, and K.S.A. 17-6712(h) in ordering CFC to pay 10% per annum interest from the time of merger, July 13, 2001, to the date payment would be made. When ruling on CFC's postjudgment motion, the district court applied *all the principles* set forth in *Moore* and amended the judgment.

CFC now requests this court to hold K.S.A. Chapter 16 and *Moore* do not apply to dissenting stockholders judgments and remand for a 0% interest rate. However, to do so would ignore the authority provided to the district court in K.S.A. Chapter 17 and disregard the rationale behind awarding interest in appraisal proceedings. We decline such an invitation.

## Assessment of Appraisal Costs

On cross-appeal, the Vernons contend the district court erred in assessing half of the appraisal costs to them. However, applying our standard of review, this argument fails.

K.S.A. 2003 Supp. 17-6712(h) provides:

"The cost of any such appraisal, including a reasonable fee to and the reasonable expenses of the appraiser, . . . shall be determined by the court and taxed upon the parties to such appraisal or any of them *as appears to be equitable* . . . ." (Emphasis added.)

When a district court sits as a court of equity, the court " 'may render a decree in accord with its own good judgment or discretion as to what justice demands, in view of the facts pleaded and evidence adduced.' " *Blair Constr.*, 273 Kan. at 692 (quoting *Nelson v. Robinson*, 184 Kan. 340, 344-45, 336 P.2d 415 [1959]).

The appraisal costs were $42,323.47. The district court assigned half to each party. The district court did not abuse its discretion by assigning half the cost of the court-appointed appraiser to the Vernons.

Affirmed.