(149 P.3d 880)
No. 93,978

BRADLEY IVES, *et al., Appellees/Cross-appellants,* v. ROBERT E. McGANNON, *Appellant/Cross-appellee.*

Opinion filed January 19, 2007.

*Stephen R. Miller* and *David R. Vandeginste*, of Miller Law Firm, P.C., of Kansas City, Missouri, for appellant/cross-appellee.

*Robert J. Bjerg* and *Lara M. Owens*, of Seigfreid, Bingham, Levy, Selzer & Gee, P.C., of Kansas City, Missouri, for appellees/cross-appellants.

Before MARQUARDT, P.J., ELLIOTT, J., and KNUDSON, S.J.

MARQUARDT, J.: This case involves claims of breach of contract, fraud, negligence, and contribution among three former business partners. Robert McGannon appeals portions of the jury verdict. Bradley Ives and David Murrill cross-appeal other portions of that jury verdict. We affirm.

In March 1987, Ives and Murrill purchased Regional Holding Company, Inc. (Regional). In June 1994, McGannon approached Ives and Murrill and told them that he was thinking about taking a position outside of public accounting and asked their "good judgment" about an employment opportunity. It was then that Ives and Murrill extended McGannon an offer to join Regional as its chief financial officer.

In August 1994, after lengthy discussions about the terms of McGannon's employment, McGannon drafted a letter of understanding to make sure all of the parties were in agreement.

McGannon was allowed to purchase 10 percent of the company's stock; however, his ownership interest was not to come into existence until Regional attained a value exceeding $8 million. Ives and Murrill represented that the company was worth $8 million at the time McGannon joined the company. McGannon was to receive the same salary as Ives and Murrill. In addition, McGannon was eligible to share in profits which occurred when the company reached a value between $8 million and $10.4 million. As incentive, McGannon was offered the possibility of purchasing another 10 percent in Regional in the future. McGannon ultimately owned 20 percent of the Class B nonvoting stock.

The stock was transferred to McGannon in mid-May 1999, although the purchase agreements are dated December 24, 1998. At the same time the stock purchases were made, the men signed a shareholder's agreement. Murrill categorized the shareholder's agreement as the final agreement between himself, Ives, and McGannon.

Gold Banc contacted Ives in early May 1999 expressing an interest in acquiring or merging with Regional. Negotiations continued until July 1999, when Ives, Murrill, and McGannon (IM&M) signed a stock purchase agreement to sell all of their interest in Regional to Gold Banc.

Gold Banc's purchase price was $13.2 million. IM&M were to continue as Gold Banc employees with reduced salaries in exchange for additional money at closing. There were other additions to the purchase price due to a delay in closing and IM&M foregoing bonuses. The amount paid at closing was $14.28 million because of these various adjustments. Each man received cash and a promissory note from Gold Banc.

Ives testified that after the sale was completed, Gold Banc had some concerns about the company. Article 9.6 of the stock purchase agreement allowed Gold Banc to arbitrate any concerns regarding setoffs. Article 10.11 of the agreement established a binding arbitration procedure. In the submission for arbitration, Gold Banc claimed that IM&M intentionally withheld information regarding a material adverse change in Regional's financial condition.

In its August 2001 decision, the arbitration panel found in favor of Gold Banc and ordered IM&M to pay damages. The panel ordered cancellation of all the outstanding promissory notes. In addition, Ives and Murrill were to each pay $219,561 and McGannon was to pay $49,878. Ives believed that this order reset the purchase price of Regional's stock and that the profits under the shareholder's agreement needed to be adjusted. However, he acknowledged that was never explicitly set out in the arbitration panel's award. An appeal of the arbitration award was not successful.

Ives testified that relations between himself and McGannon became tense after the arbitration award. McGannon's separate appeal of the arbitration award was unsuccessful. Also, McGannon began questioning how the parties were going to allocate among themselves the setoffs awarded by the arbitration panel.

The parties were unable to reach any agreement on how the arbitration order should be settled. Ives and Murrill filed a petition against McGannon in January 2003 claiming causes of action for breach of contract, unjust enrichment, and contribution. Mc-

Gannon answered and filed a counterclaim against Ives and Murrill for fraud, negligent misrepresentation, breach of fiduciary duty, civil conspiracy, indemnity, contribution, and unjust enrichment.

Ives and Murrill answered McGannon's counterclaim and filed a motion for summary judgment claiming that Counts I through VII of McGannon's counterclaim should be dismissed on statute of limitations grounds. That motion was granted by the trial court.

The remaining causes of action were tried to a jury. The jury found in favor of McGannon on Ives and Murrill's breach of contract and unjust enrichment claims. The jury found in Ives and Murrill's favor on the contribution claim but did not award monetary damages. The jury awarded McGannon $95,078 on his contribution claim. The trial court and counsel noted that it was inconsistent for the jury to find in Ives and Murrill's favor on the contribution claim yet not award any damages. The jury retired with instructions to award damages and returned a verdict of $1.

The trial court denied McGannon's request for prejudgment interest. McGannon appealed the grant of Ives and Murrill's motion for summary judgment, as well as other rulings made during the trial. Ives and Murrill cross-appeal various rulings made by the trial court.

## I. Statute of Limitations

McGannon's first seven counts claimed that Ives and Murrill materially misrepresented the value of Regional to McGannon during the period prior to Gold Banc's purchase of the company. McGannon also believed Ives and Murrill intentionally concealed marketing losses to Gold Banc, which directly resulted in the arbitration award in favor of Gold Banc. Finally, McGannon alleged that Ives and Murrill owed him a fiduciary duty, which was breached by these misrepresentations.

In their motion for summary judgment, Ives and Murrill claimed that McGannon's claims violated the 2-year statute of limitations, which rested not only on when he discovered the alleged discrepancies, but when he could have discovered them through the exercise of reasonable diligence.

In its memorandum decision, the trial court noted that Mc-Gannon served as Regional's chief financial officer, with full access to all of the company's financial and accounting records. The trial court also noted that McGannon was never prevented from accessing any financial records.

On appeal, McGannon claims there are genuine issues of material fact as to whether he knew or should have known of the financial misrepresentation within the limitations period.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 788, 107 P.3d 1219 (2005). The interpretation and application of a statute of limitations is a question of law for which the appellate court's review is unlimited. *Mynatt v. Collis*, 274 Kan. 850, 864, 57 P.3d 513 (2002).

## A. Claims Relating to the 1994 Stock Purchase

McGannon acknowledges that the 2-year statute of limitations controls this action and that he is required to show reasonable diligence in discovering the fraud. However, McGannon also believes the law does not require him to suspect his fiduciaries of intentionally withholding information. Further, he contends that a cause of action may lie dormant until something happens to "connect it with injury." McGannon claims that he had no knowledge of any misrepresentation until December 2001. McGannon be-

lieves that Kansas law allows a claim to be tolled due to such misrepresentations.

The law in Kansas is clear that a plaintiff must file his or her fraud claim within 2 years of discovering the fraud if plaintiff suffered ascertainable injury at that time. If not, plaintiff must file within 2 years of when substantial injury resulting from the fraud is reasonably ascertainable. *Bryson v. Wichita State University*, 19 Kan. App. 2d 1104, 1107, 880 P.2d 800, *rev. denied* 256 Kan. 994 (1994). The question for this court is whether the record on appeal supports the trial court's conclusion that McGannon should have known of the misrepresentation more than 2 years before filing his claim.

The record on appeal contains an affidavit from McGannon in which he claims that he did not have any concerns regarding the value of Regional until July 2001. It was then that McGannon began researching and eventually came to the realization that Ives and Murrill misrepresented the value of net operating loss carry forwards. After he filed suit, McGannon retained several financial experts, who disclosed additional alleged misrepresentations regarding the 1994 value of the company.

It is undisputed that McGannon served as Regional's chief financial officer. It is also undisputed that McGannon was involved in preparing financial reports for Regional and overseeing other financial employees of the company. More importantly, McGannon testified in his deposition that he had "full access" to the financial records which existed prior to January 1995. In the stock purchase agreement covering Ives and Murrill's sale of stock to McGannon, there is a paragraph which warranties that McGannon had "full and complete" access to all books and records. Also, McGannon testified in his deposition that it was disclosed to him that Regional had an $800,000 net operating loss.

Perhaps the most important fact comes from McGannon's deposition where he testified about meeting with Ives and Murrill in December 1998 to raise concerns about Regional being overvalued in 1994. If McGannon was aware of potential valuation issues in 1998, his counterclaim was not timely when it was filed in March 2003. See K.S.A. 60-513(a)(3).

McGannon counters by claiming that he did not become aware of the full extent of the misrepresentations until he hired experts who assisted him in reviewing the valuation given by Ives and Murrill. However, Kansas law clearly holds that the critical information to trigger the running of the statute of limitations is knowledge of the fact of injury, not the extent of injury. *Med James, Inc. v. Barnes*, 31 Kan. App. 2d 89, 99, 61 P.3d 86, *rev. denied* 275 Kan. 965 (2003). Further, in order to avoid the statute of limitations bar, it must appear that the plaintiff did not have the means of detecting the fraud through reasonable diligence. *Wolf v. Brungardt*, 215 Kan. 272, 281, 524 P.2d 726 (1974).

McGannon had the duty in 1998 to investigate his concerns, and his failure to do so now bars his attempt to claim lack of knowledge. The trial court properly determined that McGannon's claims were barred by the applicable statute of limitations.

### B. Claims Related to Gold Banc

McGannon also claims that some of his causes of action stem from representations made by Ives and Murrill in 1999 during the negotiation and sale of Regional to Gold Banc. McGannon contends that his concerns regarding secondary marketing loss arose in May 1999. He also contends he did not realize Ives and Murrill knew about the scope of these losses until October 1999.

This secondary marketing gain-loss report was generated by McGannon's office. McGannon would review the report and determine whether the final number was within an expected range. McGannon also testified in his deposition that he had no knowledge Ives and Murrill intentionally withheld secondary marketing losses.

It seems clear that McGannon's claims regarding secondary marketing losses are based on conjecture. The trial court was correct in determining that all of McGannon's claims were barred by the statute of limitations.

### II. McGannon's Motion for Summary Judgment

McGannon believes that the stock purchase agreement between IM&M and Gold Banc controls the disposition of all stock sale

proceeds between IM&M. He rejects Ives and Murrill's claim that the arbitration award served to reduce the sale price of Regional to Gold Banc. McGannon believes he paid more of the arbitration award than he was required by the stock purchase agreement. Thus, McGannon argues that he should have been awarded $170,078, the amount of his overpayment, plus prejudgment interest.

McGannon filed a motion for summary judgment which was denied by the trial court. The trial court determined that the dispute over which document controlled the sale proceeds and ultimately the arbitration order was not supported by either party with citation to authority. Ultimately, the trial court concluded that an argument could be made for both sides, rendering summary judgment inappropriate.

In general, the intent of a contracting party is a question of fact for the jury and not appropriate for summary judgment. *Hill v. Perrone,* 30 Kan. App. 2d 432, 438, 42 P.3d 201 (2002). Summary judgment may be appropriate in contract cases, but only if there are no disputed material facts. See *Allen, Gibbs & Houlik v. Ristow,* 32 Kan. App. 2d 1051, 1053, 94 P.3d 724 (2004).

Article IX of the stock purchase agreement with Gold Banc is entitled "Indemnification and Procedures," and Section 9.6 reads, in relevant part:

"The amount of any such set-off shall be allocated to each Seller in the same percentages as the percentage of the Adjustment set forth opposite such Seller's name in Section 2.4(b) hereof or such other percentages as directed in writing by all Sellers."

Section 2.4 designates how the purchase price is to be allocated to each seller. McGannon's allocation was designated as 20 percent. McGannon relies on the assumption that the arbitration award was a penalty and not a reduction of the sales price; whereas Ives and Murrill claim that the sale price was reduced by the arbitration order.

At trial, Ives testified that it was his understanding the arbitration order would be allocated pursuant to the shareholder's agreement between IM&M. Murrill also took the position that the stock pur-

chase agreement only covered the relationship between IM&M as sellers and Gold Banc as buyer, and that any matter relating only to IM&M would be covered by their shareholder's agreement.

The language in the stock purchase agreement in Section 9.6 acknowledges that there may be a separate written document which would allow the application of set-off procedures outside of the stock purchase agreement. In this case, it is unclear whether the stock purchase agreement superceded the shareholder's agreement, given the differing recollections of the parties. Because of these differences, the trial court correctly determined that summary judgment was inappropriate, and the questions were properly resolved by the jury. McGannon's claim that the trial court erred by denying his motion for summary judgment is rejected.

### III. Jury's Verdict

At trial, McGannon claimed that he overpaid the arbitration award by roughly $170,000, and he asked for reimbursement in that amount. The jury awarded him $95,078. McGannon filed a motion for judgment notwithstanding the verdict, claiming that the verdict was not supported by the evidence. McGannon argued that if the jury found in his favor, the undisputed evidence showed that he was owed $170,078. In addition, McGannon believed the jury's verdict was improperly based on parol evidence regarding a prior oral agreement between the parties. The motion was denied by the trial court.

On appeal, McGannon argues that since the jury found in his favor, it must have believed that the stock purchase agreement controlled. McGannon does not believe there was any logical way for the jury to award him only $95,078 of the damages. McGannon contends the jury was misled by the trial court's improper decision to allow parol evidence, which should have been inadmissible given the unambiguous nature of the contract.

The denial of judgment notwithstanding the verdict is reviewed under the same test as a motion for a directed verdict. In deciding a motion for directed verdict, the trial court and the appellate court must resolve all facts and inferences reasonably drawn from the evidence in favor of the party against whom the ruling is sought

and determine whether evidence exists in which a jury could find a verdict for that party. A directed verdict must be denied when evidence exists upon which a jury could properly find a verdict for the nonmoving party. However, it is a question of law for the trial court's determination when no evidence is presented on an issue or where the evidence is undisputed and the minds of reasonable persons may not draw differing inferences or arrive at opposing conclusions. *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 126-27, 815 P.2d 72 (1991).

Initially, we reject McGannon's claim that the contract was unambiguous. We have already noted that certain portions of the stock purchase agreement and the shareholder's agreement differ as to IM&M. Rules of construction are not used when the language of written instruments are clear and can be carried out as written. *Zukel v. Great West Managers, LLC*, 31 Kan. App. 2d 1098, 1101, 78 P.3d 480 (2003), *rev. denied* 277 Kan. 928 (2004). However, where ambiguity exists concerning a vital point, parol evidence will be received to aid in its construction. *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 452, 827 P.2d 24 (1992). Therefore, there was nothing improper about the jury's reliance on parol evidence. The question before this court, then, is whether the jury's verdict is supported by the evidence.

At trial, the parties presented lengthy testimony regarding how the Gold Banc proceeds were to be distributed. In addition to the sales price, the parties had to divide several additional payments which became due because of further negotiations. Also, Murrill testified that he and Ives made an error when calculating the sales proceeds, in that they did not fully account for $150,000 that was owed to them by McGannon. Murrill explained that instead of having McGannon write them a check, Ives and Murrill subtracted it out of any hypothetical proceeds McGannon would receive from his share of the Regional sale price. They claim that this calculation error ended up costing Ives and Murrill $75,000 each. The jury's verdict was $75,000 less than what McGannon requested, which seems to be supported by the testimony presented at trial.

The jury verdict was supported by the totality of the evidence. The trial court did not err by denying McGannon's motion for judgment notwithstanding the verdict.

## IV. Prejudgment Interest

After the jury returned its verdict, McGannon filed a motion requesting an award of prejudgment interest. The motion was denied by the trial court, which found that McGannon's claim was not liquidated. On appeal, McGannon argues that his claim was liquidated, since it was a fixed sum once the Gold Banc arbitration award was finalized. The standard of review for allowing prejudgment interest is a matter of judicial discretion subject to reversal only upon a showing of abuse of discretion. *Vernon v. Commerce Financial Corp.*, 32 Kan. App. 2d 506, 511, 85 P.3d 211 (2004).

In Kansas, the general rule is that prejudgment interest is allowable on liquidated claims. A claim becomes liquidated when both the amount due and the date on which such amount is due are fixed and certain or when the same become definitely ascertainable by mathematical calculation. *Blair Constr., Inc. v. McBeth*, 273 Kan. 679, 689, 44 P.3d 1244 (2002).

The Kansas Supreme Court in *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 883, 953 P.2d 1027 (1998), noted that a claim may be liquidated even if the issue of damages was left for a jury to decide. However, in that case there was no dispute about the amount of damages, and the only question left for the jury was whether coverage existed under the insurance policy. In the instant case, the parties came to court with divergent numbers regarding damages.

The amount due to McGannon did not become fixed until judgment was entered by the jury, meaning that McGannon was not entitled to prejudgment interest as of right. The only question left for this court to decide is whether the trial court erred by refusing to enter a discretionary award.

Given the record on appeal, we agree that the trial court did not abuse its discretion by denying McGannon's motion for prejudgment interest.

## V. Ives and Murrill's Cross-Appeal; Motion for a New Trial

In appealing the denial of their motion for a new trial, Ives and Murrill claim the trial court abused its discretion by admitting evidence regarding the parties' intent to distribute the $150,000 owed

by McGannon. Ives and Murrill believe that there was a clear and unambiguous amendment to the agreement, and the trial court's decision to allow testimony on the parties' intent was an error. They assert that $150,000 should have been deducted from McGannon's proceeds from the Gold Banc sale.

The granting of a new trial is a matter of trial court discretion and will not be disturbed on appeal unless there is a showing of abuse of discretion. *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 485, 15 P.3d 338 (2000). Similarly, the admission of evidence lies within the sound discretion of the trial court. *Garrett v. Read*, 278 Kan. 662, 667, 102 P.3d 436 (2004).

Article 8.2 of the shareholder's agreement states that in the event the stock is sold, McGannon was to receive one-third of all purchase proceeds for all of his stock if the purchase price fell between $8 million and $10.4 million. In the event the purchase price exceeded $10.4 million, McGannon was to receive 20 percent of the proceeds. After the shareholder's agreement was signed, the parties signed an amendment. Specifically, Article 8 was amended to show that McGannon's proceeds from any stock sale should be decreased by $150,000. In contrast, the stock purchase agreement with Gold Banc established a different payment arrangement.

At trial, Ives testified that the amendment was the codification of McGannon's agreement to decrease his sale proceeds by $150,000. Ives claimed the parties erroneously applied the amendment after the Gold Banc sale was completed, and he told the jury that it should have been applied differently. Ives admitted that both he and Murrill approved the payment schedule. Ives testified that he and Murrill were not aware of the alleged error until counsel discovered it after litigation commenced.

During his testimony, Murrill clarified that instead of taking the $150,000 from McGannon's sale proceeds, the money was accounted for by adding it to Ives and Murrill's share in a more indirect manner. Thus, the repayment tier was increased from $8 million to $8.15 million; the other tiers were similarly increased by $150,000. Murrill believed the manner in which it was actually implemented forced him and Ives to share in the burden of McGannon's $150,000 debt.

In contrast, McGannon testified that the arrangement described by Murrill was actually an agreement reached by the parties. McGannon claimed that the wording in the amendment was not an accurate representation of the agreement reached by the parties. Further, McGannon was not aware of any alleged discrepancy until Murrill's deposition.

When a contract is complete, unambiguous, and free from uncertainty, parol evidence of prior or contemporaneous agreements or understandings tending to vary the terms of the contract evidenced by the writing is inadmissible. *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, 679-80, 829 P.2d 884 (1992).

The amendment to the shareholder's agreement was unambiguous, stating that in the event there was a stock sale to Gold Banc, McGannon should have the purchase price for his shares of stock decreased by $150,000. Nothing in the original shareholder's agreement changes that fact. McGannon argues on appeal that the amendment under examination here was rendered obsolete by the Gold Banc stock purchase agreement. However, that is not the issue before this court. We are asked only to determine whether the trial court abused its discretion by admitting the parol evidence and its denial of Ives and Murrill's motion for a new trial.

We agree that the trial court abused its discretion by allowing testimony regarding an alleged agreement governing this $150,000. However, we believe the error was harmless. Harmless error is error which does not prejudice the substantial rights of a party. It affords no basis for reversal of a judgment and must be disregarded. *Smith v. Printup*, 262 Kan. 587, 603, 938 P.2d 1261 (1997). In this case, the jury heard from both parties regarding the true intent for disposition of the funds. Under those circumstances, it does not appear Ives and Murrill were prejudiced by the admission of the parol evidence. In addition, it appears that the jury was not totally persuaded by McGannon's testimony, as the amount of money requested by McGannon was decreased by $75,000. We can only assume that decrease was due, at least in part, to the misapplication of the $150,000. Therefore, we do not believe the trial court abused its discretion by denying Ives and Murrill's motion for a new trial.

## VI. Shareholder's Agreement

Part of Ives and Murrill's cross-appeal centers on the allocation of the arbitration award entered against IM&M. Ives and Murrill claim the award should have been apportioned pursuant to Article 8.2 of the shareholder's agreement, while McGannon believes the Gold Banc stock purchase agreement should apply. Ives and Murrill claim that the shareholder's agreement did not merge into the Gold Banc stock purchase agreement; therefore, the shareholder's agreement covered the rights of IM&M as they relate to one another.

At trial, there was extensive testimony that the stock purchase agreement with Gold Banc individually bound IM&M. Ives testified that the "other agreement" language was inserted as a protection in the event the sale price went below $10.4 million. Murrill testified that as far as he was concerned, the shareholder's agreement covered all matters relating to IM&M, while the stock purchase agreement was limited to the stock sale to Gold Banc. McGannon testified that the stock purchase agreement superceded the shareholder's agreement due to the plain language of Section 10.5 of the stock purchase agreement.

Section 10.5 of the stock purchase agreement reads: "This instrument embodies the entire agreement between the parties hereto with respect to the transactions contemplated herein, and there have been and are no agreements, representations or warranties among the parties other than those set forth or provided herein."

The stock purchase agreement does not define "parties." Therefore, the contract is ambiguous as to whether it treats IM&M as one entity or whether all three men are separate individuals under the contract. Ives and Murrill rely on the former interpretation, McGannon relies on the latter. There was testimony as to both interpretations at trial.

The jury heard evidence supporting both theories of the case and reviewed the contract language during deliberations. Therefore, we reject Ives and Murrill's claim that the verdict was not supported by evidence. There was testimony to support Mc-

Gannon's position, and the jury evidently relied on that testimony when reaching a verdict. This court does not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact. *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 775, 69 P.3d 1087 (2003). Ives and Murrill's claim is denied.

## VII. Damage Award

At trial, there was extensive testimony regarding the parties' obligation to pay attorney fees. During the Gold Banc arbitration proceeding, IM&M were represented by Kirk May. It was understood that the men were jointly and severally liable for the total amount of May's fees. Initially, May's bills were paid in a timely manner. However, that changed and May made it very clear that his bills needed to be paid in full each month. After the arbitration award was returned, May began having great difficulty collecting his fees.

Ultimately, May's unpaid bill was in excess of $40,000. He drafted a lawsuit against IM&M and sent it to them before it was filed, hoping that an agreement could be reached. Ives and Murrill each paid approximately one-third of the outstanding balance and received a release from May. McGannon did not pay and was sued. The matter was eventually settled using fee dispute mediation.

Murrill testified that IM&M agreed to split May's bill on a 38/38/24 percent basis. However, he testified that the agreement was temporary and limited solely to May's bills for the arbitration proceeding. There were, however, additional costs for expert witnesses. Ives believed the fees should be split one-third each. McGannon testified that the 38/38/24 percent split was a permanent arrangement.

In their petition, Ives and Murrill asked for $15,763.63 each in attorney fees they believed to be McGannon's responsibility. The jury found in favor of Ives and Murrill but initially did not award any monetary damages. The trial court found the verdict inconsistent, and the jury was told that it could pick any amount between $1 and $31,527.26.

The original jury verdict form reads: "On Count III of plaintiffs' claim for contribution related to legal fees and expenses, do you find in favor of plaintiffs Bradley Ives and David Murrill or in favor of defendant Robert McGannon?" There is an "X" marked next to "Plaintiffs Bradley Ives and David Murrill" on the verdict form. The follow-up question reads: "If you found in favor of plaintiffs Bradley Ives and David Murrill in your answer to Question No. 4 above, what damages do you find plaintiffs have sustained as a result of defendant's conduct?" There is a "0" marked in the box.

The trial court noted for the record that it was concerned the jury found in favor of Ives and Murrill, yet awarded no monetary damages.

The trial court raised the possibility of calling the jury back and instructing it that it "must arrive at a damage amount" on the verdict form. McGannon's counsel argued that it might really have been the jury's intent to not award Ives and Murrill any money and posed the theory that they could not "know what drove their thinking."

Ives and Murrill's counsel asked the trial court to call the jury back and instruct it that its verdict was inconsistent. He asked the trial court to instruct the jury that it "must come up with some amount of damages" in Ives and Murrill's favor. McGannon's counsel proposed that the jury be told that it must award damages in an amount "greater than zero and less than" the amount asked for by the plaintiffs.

The supplemental verdict form reads: "On Count III of plaintiffs' claim for contribution related to legal fees and expenses, what damages do you find plaintiffs have sustained as a result of defendant's conduct? Please state your answer in an amount between $1.00 and $31,527.26." The jury awarded $1.

On appeal, Ives and Murrill claim the jury, by finding in their favor, expressly rejected McGannon's claim that the fees were to be apportioned in the 38/38/24 manner. They do not ask this court to remand the case, but instead ask that this court enter a finding that McGannon owes $31,527.26.

When a verdict is challenged for insufficiency of evidence or as being contrary to the evidence, it is not the function of the appel-

late court to weigh the evidence or pass on the credibility of the witnesses. If the evidence, with all reasonable inferences to be drawn therefrom, when considered in the light most favorable to the prevailing party, supports the verdict, it will not be disturbed on appeal. *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 478, 15 P.3d 338 (2000).

We agree with Ives and Murrill that the jury's verdict is somewhat puzzling. However, the jury clearly complied with the instruction given by the trial court and awarded damages of $1. If it is clear that a jury was confused in awarding damages, or where a jury verdict manifests a disregard for the plain instructions of the court on the issue of damages, or arbitrarily ignores proven elements of damage, the verdict should be set aside on motion for a new trial. *City of Ottawa v. Heathman*, 236 Kan. 417, 423, 690 P.2d 1375 (1984). However, there are no indications here that the jury did anything but follow the instructions as given by the trial court.

We are unwilling to delve into the jury's thought process, as it is not this court's place to substitute its judgment for that of the jury. Ives and Murrill's attorney was given the opportunity to have input on the additional instruction that was given to the jurors, and the record on appeal shows that he appeared to be comfortable with the language of the supplemental instruction. We find that Ives and Murrill's counsel played a substantial role in negotiating the language of the supplemental jury instruction and that there is sufficient evidence to support the outcome of the damage award.

Affirmed.